Leonard Henly Bernheim v. Commissioner.
Bernheim v. Commissioner
Docket No. 20117.
United States Tax Court
1950 Tax Ct. Memo LEXIS 46; 9 T.C.M. (CCH) 1021; T.C.M. (RIA) 50277; November 10, 1950
Irving B. Stewart, Esq., for the petitioner. Ellyne E. Strickland, Esq. for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: This case involves a deficiency in income tax for the calendar year 1943 in the amount of $865.75. The year 1942 also is involved in the computation of the deficiency pursuant to the Current Tax Payment Act of 1943. Two issues are presented: (1) whether the petitioner is entitled to deduct from gross income for 1942 the sum of $4,000 on account of an alleged debt which is claimed to have *47 become worthless in that year; and (2) whether petitioner is entitled to the deductions claimed for office expenses in connection with the administration of the trusts set up under his father's will in the amount of $319.76 for the calendar year 1942 and in the amount of $332.26 for the calendar year 1943. Findings of Fact Petitioner Leonard Bernheim is a resident of New York City, New York. He is engaged in the business of manufacturing handkerchiefs. His income tax returns for the years 1942 and 1943 were filed with the collector of internal revenue for the third district of New York. He married the mother of George Peabody, Jr., on November 10, 1939. Peabody and he had met in 1934 when they were both working in a political campaign. Issue No. 1 Petitioner advanced sums totaling $4,000 to Peabody from 1937 to 1941 for business and personal expenses as follows: Date
Amount
June 18, 1937
$ 900
June 12, 1939
600
July 17, 1939
200
Feb. 9, 1940
100
Jan. 16, 1940
500
Nov. 1, 1940
800
June 4, 1941
500
July 24, 1941
400
Total
$4,000
In 1937 Peabody, then about 25 years of age, went to Puerto Rico to take a job on a newspaper at a salary of $150 *48 per month. In June 1937 petitioner advanced Peabody $900 to defray the expense of the trip and costs of establishing himself in the new surroundings. Peabody remained in Puerto Rico until the fall of 1938 when he returned to the United States. After returning to the United States, Peabody became the editor of a news service which later failed. On June 12 and July 17, 1939, petitioner advanced to Peabody the sums of $600 and $200, respectively, for business and personal expenses. At this time Peabody lived with his grandparents and was partially self-supporting. In October 1939 Peabody and two associates established a publicity agency to which petitioner advanced $3,000, a sum which is not involved in the present proceeding. The two associates withdrew from the venture in the middle of 1940. After operating at a loss in 1940 and 1941, it was discontinued by Peabody. For the year 1941 petitioner claimed and was allowed a deduction of such $3,000 as a debt which became worthless in that year. Peabody was married in March 1941. He lived in Connecticut from that date until October 1948. In the beginning of 1942 he was engaged in newspaper work in Darien, Connecticut. In June of that *49 year he took a job as a production clerk in a war plant at a starting salary of $47 a week. He continued in that employment until November 1945. He filed a petition in bankruptcy in 1942 and in August was adjudged a bankrupt in the United States District Court for the District of Connecticut. On September 21, 1942, petitioner filed a proof of unsecured debt in the sum of $7,000 representing "various advances made to the bankrupt from time to time," and this alleged debt of $7,000 was included in the list of general creditors holding unsecured claims against George Peabody, Jr., in the total amount of $16,400.04. On April 9, 1943, the first and only dividend was declared by the referee in bankruptcy in the matter of George Peabody, Jr., bankrupt, File No. 21653, and the petitioner thereby received the sum of $140 less attorney fees of $28. The various advances made by the petitioner to Peabody from June 1937 to July 1941, inclusive, were not evidenced by notes of any kind and there was never any agreement to pay interest thereon. Numerous other advances were made to Peabody by the petitioner during this period, usually in amounts of $25, $50, or $100. They were not included in the *50 proof of claim which was filed in the bankruptcy proceeding because the checks were not made payable to George Peabody, Jr. and they would have been difficult to prove. In July 1941 petitioner learned that his stepson had been requesting loans from other friends. Thereupon petitioner asked him, for the first and last time, to repay the loans made to him by the petitioner. Petitioner did not then receive, and has not since received, repayment of any part of the sums which he advanced to Peabody except for the payment received in the bankruptcy proceeding. In reporting his net income for the year 1942 the petitioner claimed as a bad debt a deduction of $4,000 for the total debt growing out of advances made by him to George Peabody, Jr., which deduction was disallowed by the Commissioner. Issue No. 2 Under the will of his father, Isaac J. Bernheim, the petitioner had a remainder interest in certain trusts created for the benefit of petitioner's mother and his two sisters during their respective lives. During the taxable years involved he received no income from this estate. Petitioner was one of the executors of his father's will and has continued to serve as one of the trustees *51 of his father's estate during 1942 and 1943. Until his death in 1946 petitioner's uncle was also a trustee of the estate of Isaac J. Bernheim. Petitioner's father left a net estate of more than $1,000,000, which consisted of securities and mortgages. Petitioner's father and uncle had shared an office at 475 Fifth Avenue, New York City, each paying one-half of the office expenses which amounted to approximately $2,500 a year. After the death of petitioner's father the uncle continued to operate from this office and the records of the estate of Isaac J. Bernheim were kept there to secure the proper administration of the trust fund. The office expenses consisted of rent, the salary of a stenographer-secretary, and normal operating expenses such as telephone, light, water, and towel service. Petitioner, his mother and his two sisters, being the only persons having an interest in the "Estate of Isaac J. Bernheim," agreed informally that each would pay one-quarter of the office expenses chargeable to the estate. In 1942 and 1943 petitioner paid to the "Estate of Isaac J. Bernheim" the sums of $319.76 and $332.26, respectively, representing one-quarter of the office expenses for each *52 year. The trustees did not take deductions for these expenses from the trusts' income. In his income tax returns for 1942 and 1943 petitioner claimed deductions for these expenditures, which deductions were disallowed by the respondent. Opinion [Issue No 1] The first issue presented for decision is whether the petitioner is entitled to deductfrom gross income for 1942 the sum of $4,000 on account of an alleged debt which is claimed to have become worthless in that year. The applicable section of the Code is section 23 (k) (1) quoted in the margin. [1] The pertinent regulation is Regulations 111, section 29.23 (k)-1 (a), as amended by T.D. 5376, C.B. 1944, pages 120-121. *53 To entitle a taxpayer to deduct a bad debt from gross income, such a debt must have had an existence in law and in fact. Luke & Fleming, Inc., 1 B.T.A. 12. No valid debt exists unless there is an unconditional obligation of another to pay the taxpayer. To establish such an obligation the taxpayer must show that there was an intention at the time of the transaction, or transactions, to make a loan and not a gift. Cf. Jacob Grossman, 9 B.T.A. 643. Such an intention should be evidenced by a reasonable expectation that the sum would be repaid when the debt was contracted. George L. Rickard, 15 B.T.A. 316; W. F. Young, Inc. v. Commissioner, 120 Fed. (2d) 159. The petitioner made advances to his stepson, Peabody, in the total amount of $4,000 over a four-year period, 1937 to 1941. Petitioner requested no interest on the sums advanced, so clearly he expected no profits from the transaction. Cf. Lammot du Pont, 36 B.T.A. 223. There is no evidence to show that at the time these advances were made the parties set any time for repayment. Nor were notes or security for the sums advanced demanded by the petitioner. Cf. Jacob Grossman, supra. *54 No investigation of the ability of Peabody to repay was shown, despite his youth, his lack of business experience, or his lack of success in the undertakings he attempted. Cf. Estate of Carr V. Van Anda, 12 T.C. 1158. No requests for repayment were made until almost four years had elapsed from the first advance, and then, although no action was taken by his stepson on petitioner's request, no further requests for repayment were made. Cf. Thom v. Burnet, 55 Fed. (2d) 1039. Nor did Peabody make any offer to repay during this entire period even though he was employed on a salary basis part of the time and presumably could have repaid at least a small part of the advances to evidence his intention to pay off the alleged debts. The petitioner's testimony of reliance upon the character, ability, and integrity of his stepson for repayment of the loan cannot outweight the lack of businesslike precautions or other evidence of an intention to establish a debtor-creditor relationship. Cf. Thomas Liggett, 13 B.T.A. 794; Samuel B. Price, 7 B.T.A. 1237
After careful consideration of the whole record we believe that petitioner made the advances *55 in question with hardly more than a hope they would be repaid, and conclude that petitioner has failed to establish the existence of a bona fide debt between himself and George Peabody, Jr. The Commissioner, therefore, did not err in disallowing the deduction of the amounts claimed as debts which became worthless in 1942. Issue No. 2 The second issue for decision is whether petitioner is entitled to deductions of $319.76 and $332.26 for the years 1942 and 1943, respectively, which amounts were expended by petitioner for the maintenance of the trusts set up under his father's will. [2]
Petitioner contends that it makes no difference whether the trustee deducted the amount of the expenses from the trust income or requested the persons interested in the corpus of the trusts to reimburse the trustees for the amount of the expenses after which the trustees distributed the income as received, without any deduction for expenses. Petitioner also suggests *56 that since the expenses were incurred and paid in connection with the preservation of his rights in the various trust estates created by his father's will, that he is entitled to the deductions under section 23 (a) (2) of the Internal Revenue Code quoted in the margin. [3]
The expenses under consideration were incurred to confer the benefits of proper record-keeping and other clerical services on the trusts. Since the trusts were immediately benefited by the services rendered and the petitioner only indirectly by the proper administration of the trusts in which he had a future interest, the income of the trusts, as taxable entities, and not that of petitioner properly should bear the expenses in question and be entitled to the claimed deductions. Bercaw v. Commissioner, 165 Fed. (2d) 521, *57 affirming W. W Bercaw, T.C. Docket 7263 [6 TCM 27]. The respondent did not err in disallowing the deduction by petitioner of expenses paid by petitioner in the years 1942 and 1943 for the administration of the trusts. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.↩
2. We are unable to determine from the evidence submitted whether the expenses in question were incurred during 1942 and 1943 for the administration of the estate of petitioner's father as well as for the trusts set up under his will.↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (a) Expenses. - (2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation or maintenance of property held for the production of income.↩