Clyde L. Powell v. Commissioner.
Powell v. Commissioner
Docket Nos. 61174, 64655.
United States Tax Court
T.C. Memo 1959-36; 1959 Tax Ct. Memo LEXIS 211; 18 T.C.M. (CCH) 170; T.C.M. (RIA) 59036; February 26, 1959
*211 Held, respondent has not sustained his burden of proving that the income tax returns filed by petitioner for the taxable years 1944 to 1949, inclusive, were false or fraudulent returns with intent to evade tax. Held, further, the deficiencies and additions to the tax are all barred by the statute of limitations. Daniel B. Maher, Esq., 1001 Connecticut Avenue, N.W., Washington, D.C., for the petitioner. Paul E. Waring, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion
*212 ARUNDELL, Judge: In these consolidated proceedings, the respondent determined deficiencies in income tax and additions to the tax under sections of the Internal Revenue Code of 1939 for the calendar years as follows: Additions to the Tax
Dkt. No.
Year
Deficiency § 293(b) § 294(d)(1)(A) § 294(d)(2)
61174
1945
$ 3,964.10
$ 1,982.05
$ 275.24
$ 235.92
61174
1946
16,982.55
8,491.28
1,191.15
1,020.99
61174
1947
16,951.97
8,475.99
1,183.36
1,014.31
61174
1948
42,015.31
21,106.10
3,589.59
2,533.83
64655
1949
13,426.28
6,798.05
1,244.99
829.98
As more fully set forth in our findings, the respondent determined that petitioner received additional unreported taxable income for each of the taxable years and, in addition, he disallowed certain deductions claimed by petitioner on his returns for traveling expenses, contributions, interest, and taxes. All of the deficiencies and all of the additions to the tax are in controversy. Petitioner, by an amendment to the petitions, pleads the statute of limitations for all the years. In his brief, the respondent concedes that, except for fraud, the assessment and collection *213 of the proposed deficiencies for each of the taxable years here involved are barred by the statute of limitations. Findings of Fact Some of the facts are stipulated and they are so found. Petitioner is an individual. At the time he filed his petition in Docket No. 61174, he was residing in Coral Gables, Florida. In Docket No. 64655, he alleged that his residence was in Buffalo, Missouri. At the time of the hearing, he had a temporary residence in Pasadena, California. He filed United States individual income tax returns for each of the taxable years here involved with the then collector of internal revenue for the district of St. Louis, Missouri. Petitioner was born on March 2, 1896, in Salem, Missouri. He attended 3 years of high school in Salem. During World War I he served for a period of 17 months with the Ambulance Division in France where he was attached to Base Hospital No. 28. He was discharged in May 1919. During the year 1920, petitioner entered the real estate business in Kansas City, Missouri, and was associated with W. L. Morrison Investment Company as a broker on a commission basis. During the year 1925 and part of the year 1926 he was in the building and real *214 estate business in Florida and, because of the depression in Florida, he went to St. Louis, Missouri, in the latter part of 1926 and became associated with LaClede Bond & Mortgage Company as a mortgage loan broker, where he remained until September 28, 1934. During the years 1933 and 1934, petitioner acquired 10 first mortgages valued at $54,000 on real estate located in St. Louis, Missouri. On September 28, 1934, petitioner filed an application for employment with the Federal Housing Administration (sometimes referred to hereinafter as F.H.A.) in Washington, D.C. On October 20, 1934, he was employed by the F.H.A. as an appraiser in the district director's office in St. Louis, Missouri, at a salary of $2,600. On December 1, 1934, he was transferred to the position of assistant field director, mortgage and insurance division, F.H.A., Washington, D.C., at a salary of $5,200 per annum. He had in his possession at that time approximately $2,000 of $3,000 in cash in addition to the $54,000 of first mortgages, which were left with a former business associate, William D. Orthwein, in St. Louis for him to service. On May 16, 1935, he was appointed to the position of divisional director *215 at a salary of $6,500 a year and, effective May 29, 1935, his designation was changed to that of assistant director of mortgage insurance in the insurance division, F.H.A. Effective September 20, 1935, he was designated assistant to the deputy administrator, mortgage insurance division, at a salary of $6,500 a year. On February 1, 1936, he was appointed assistant deputy administrator in the same division at a salary of $6,800 a year. On October 1, 1936, his salary was increased to $8,000 per year in the same position. During the latter part of 1936, petitioner asked Orthwein to liquidate the first mortgages, which he did and, with the proceeds thereof, Orthwein purchased $50,000 face value of United States Government bearer bonds, consisting of six $5,000 bonds and two $10,000 bonds, which he gave to petitioner who put them in his safe deposit box at the Wardman Park Hotel. In 1937 petitioner began borrowing money from the Riggs National Bank (sometimes hereinafter referred to as Riggs). The amounts borrowed ranged from $500 to $5,000. His highest indebtedness to the bank up to August 26, 1940, was $6,500. This was increased to $10,000 on September 9, 1940, when he deposited with *216 Riggs two Government bonds each in the face amount of $5,000 which were sold by the bank on that date and the proceeds used by the bank to liquidate petitioner's indebtedness to them as of that date. During the taxable years 1945 to 1948, inclusive, petitioner borrowed from Riggs at six different times a total amount of $15,500 itemized as follows: Date Borrowed
Amount
Date Repaid
June 9, 1945
$2,500
Jan. 21, 1946
Feb. 1, 1946
3,000
July 30 and
Oct. 28, 1946
Nov. 12, 1946
2,000
Feb. 11, 1947
Mar. 31, 1947
3,000
Dec. 1, 1947
Dec. 15, 1947
2,500
Mar. 16, 1948
Apr. 19, 1948
2,500
Aug. 18, 1948
The above amounts totaling $15,500 were all deposited in petitioner's checking account with Riggs. Petitioner resided at the Wardman Park Hotel, the name of which was later changed to Sheraton Park Hotel, during the period January 1936 until September 1, 1954, when he moved to Westmoreland Hills, Montgomery County, Maryland. During the years 1938 to 1949, inclusive, Powell maintained a safe deposit box with Riggs. He also had a safe deposit box at the Wardman Park Hotel in which he kept private papers and cash. On February 1, 1938, petitioner's salary *217 with F.H.A. was increased to $9,000 per year. Effective February 3, 1938, he was appointed to the position of deputy administrator, and on October 26, 1938, he was made assistant administrator at the same salary of $9,000 per year. On October 1, 1941, petitioner's salary was increased to $9,250 per annum and on February 28, 1942, his title was changed from assistant administrator to assistant commissioner, rental housing division. During the period from July 6, 1938, to March 15, 1941, petitioner had a brokerage account with J. S. Bache & Co., through which he sustained a net loss of $10,464.44 during the period. On March 29, 1944, petitioner was appointed assistant commissioner in the division of the deputy commissioner, office of the assistant commissioner for rental housing of the F.H.A. On July 1, 1945, his salary was increased to $9,800 per year and on July 1, 1946, it was increased to $10,000. He received progressive increases until October 28, 1951, when his salary was increased to $11,800 per year. Effective July 31, 1953, the title of his position was changed from that of assistant commissioner, rental housing division, to assistant commissioner, multi-family housing division. *218 During the years 1945 to 1949, inclusive, petitioner gambled in Washington, D.C., Maryland, New York, Chicago, and Florida, at racetracks, private places and with bookmakers. He made bets either in person or by telephone. His bets were between four and five a week, and his average bets were between $2,000 and $3,000 per day. Petitioner's winnings were paid to him in cash or by check and he paid his gambling losses either in cash or by check. Petitioner did not keep or maintain any books or records either with respect to his financial or gambling transactions during any of the years 1945 to 1949, inclusive, nor did he retain any of his cancelled checks for those respective years for a period longer than approximately 3 years. The only financial records petitioner has are copies of his bank statements relating to his checking account maintained at Riggs for those years. During the years 1945 to 1949, inclusive, petitioner's checking account at Riggs disclosed 170 deposits totaling $176,103.47, 557 checks written totaling $175,725.58, and 47 surcharges by the bank, totaling $56.40, itemized by years as follows: Opening
Closing
Year
Balance
Deposits Made
Checks Written
Surcharges
Balance
1945
$528.83
$ 14,380.05
$ 14,786.10
$10.35
$112.43
1946
112.43
38,302.57
37,893.15
16.05
505.80
1947
505.80
41,596.84
41,815.81
12.95
273.88
1948
273.88
52,190.19
52,089.22
11.20
363.65
1949
363.65
29,633.82
29,141.30
5.85
850.32
Totals
$176,103.47
$175,725.58
$56.40
*219 Included in the deposits were salary received by petitioner from F.H.A., money borrowed from Riggs and gross receipts from gambling transactions. Included in the checks written were amounts expended by petitioner for personal living expenses, repayment of loans and amounts expended in payment of gambling debts. Petitioner spent about $1,080 a year for rent; about $1,400 for food; and about $400 for clothing. He did not know the exact amount of his winnings and losses from gambling at the end of any of the years before us and reported neither winnings nor losses on his income tax returns for those years for the reason that he knew his losses from gambling at the end of each year exceeded his winnings from that source. During the years 1945 to 1949, inclusive, petitioner's net salary checks, after reductions for withholding tax, retirement payments, and savings bond purchases, and checks for reimbursement of traveling expenses, were in the total amounts as follows: Not
Year
Salary
Expenses
Deposited
1945
$6,083.46
$348.60
$2,569.51
1946
7,460.22
135.46
5,005.24
1947
7,734.22
529.14
3,481.52
1948
8,052.71
866.57
2,864.09
1949
8,295.56
598.25
775.17
*220 Petitioner, in his income tax returns filed for the years 1945 to 1949, inclusive, reported all of his salary from F.H.A., less traveling expenses, and claimed deductions for contributions, interest paid, and taxes paid, as follows: 1945
1946
1947
1948
1949
Salary
$9,413.76
$9,742.20
$9,999.86
$10,139.45
$10,329.80
Less: Travel
172.00
None
455.00
515.00
342.00
$9,241.76
$9,742.20
$9,544.86
$ 9,624.45
$ 9,987.80
Contributions
1,300.00
1,300.00
1,300.00
1,250.00
1,250.00
Interest
125.00
120.00
130.00
200.00
None
Taxes
93.51
198.68
117.78
144.87
340.13
Total deductions
$1,518.51
$1,648.68 *
$1,547.78
$ 1,594.87
$ 1,590.13
Net income
$7,724.25
$8,093.52
$7,997.08
$ 8,029.58
$ 8,397.67
The respondent in his determination of the deficiencies herein disallowed all of the deductions claimed and in lieu thereof allowed the standard deduction of $500 for 1945, 1946, and 1947 and $1,000 for 1948 and 1949, disallowed all of the travel expenses claimed for 1945, 1947, 1949 and $103 of the $515 claimed for 1948, corrected an error of $1 in the net income reported for 1945, and *221 in addition to all of these adjustments determined that petitioner received additional unreported taxable income for each of the years of $8,017.50, $31,220.73, $30,874.48, $71,301.28, and $27,715.44, respectively. The respondent determined the above additional unreported taxable income under a combination of the (1) bank deposit and (2) cash expenditure methods, as follows: Method
1945
1946
1947
1948
1949
(1)
$ 8,017.50
$30,680.00
$31,315.00
$41,635.00
$21,515.18
(2)
None
540.73
(440.52)
29,666.28
6,200.26
Additional Income
$ 8,017.50
$31,220.73
$30,874.48
$71,301.28
$27,715.44
The additional income determined under the bank deposit method was determined by excluding from the total bank deposits that portion of petitioner's salary which he deposited in Riggs, the previously mentioned loans made by Riggs, a loan made by Nathan Manilow in 1948 for $2,000, some expense checks deposited during 1946 to 1949, inclusive, and a tax refund check deposited in 1946, all of which are set forth in schedule form as follows: Additional Income Determined Under Bank Deposit Method
1945
1946
1947
1948
1949
Total bank deposits
$14,380.05
$38,302.57
$41,596.84
$52,190.19
$29,633.82
Exclude deposits of: Salary checks
3,862.55
2,577.73
4,462.05
5,616.27
7,657.44
Expense checks
12.71
319.79
438.92
461.20
Loans
2,500.00
5,000.00
5,500.00
4,500.00
Tax refund
32.13
Total exclusions
$ 6,362.55
$ 7,622.57
$10,281.84
$10,555.19
$ 8,118.64
Unexplained deposits deter-
mined as additional in-
come
$ 8,017.50
$30,680.00
$31,315.00
$41,635.00
$21,515.18
*222 The additional income determined under the cash expenditure method for the years 1946 to 1949, inclusive, was determined in the manner set forth in the next several paragraphs. During the taxable year 1946, petitioner made cash expenditures totaling $5,545.97 consisting of: Repayment of Loans to Riggs
National Bank
Jan. 1, 1946
$2,515.97
July 30, 1946
1,515.00
Oct. 28, 1946
1,515.00
Total
$5,545.97 The respondent added this amount of $5,545.97, less the undeposited checks of $5,005.24, or $540.73, to the unexplained deposits of $30,680 in arriving at the $31,220.73 of additional unreported income determined by him. On December 1, 1947, petitioner repaid a loan to Riggs in cash in the amount of $3,041. The respondent subtracted from the unexplained deposits the difference between the undeposited checks of $3,481.52 and the payment of $3,041, or $440.52, in arriving at the $30,874.48 of additional unreported income determined by him. The respondent determined that during the year 1948 petitioner made expenditures either in cash, bank draft, or by a cashier's check, in amounts as follows: Kassan-Stein Tailors
$ 100.00 cash
Sheraton Park Hotel
313.22 cash
Riggs National Bank
2,510.41 cash
Federal income tax withheld
1,535.90 cash
Federal salary retirement
550.84 cash
Leibe, DeGrazia and King
7,350.00 cash
Leibe, DeGrazia and King
8,486.00 bank
draft
Leibe, DeGrazia and King
11,684.00 cashier's
check
$32,530.37
*223 The respondent added this amount of $32,530.37, less the undeposited checks of $2,864.09, or $29,666.28, to the unexplained deposits of $41,635 in arriving at the $71,301.28 of additional unreported income determined by him. Leibe, DeGrazia and King was a gambling partnership in Melrose Park, Illinois, with whom petitioner gambled in 1948. The above amounts paid to the partnership were in settlement of gambling losses. During the year 1949, petitioner made cash expenditures totaling $6,975.43, consisting of: Capital Cadillac Automobile Co.
$4,544.00
Sheraton Park Hotel
899.43
Bismark Hotel, Chicago, Ill.
32.00
Piping Rock Gambling Casino, Sara-
toga Springs, N. Y.
1,500.00
Total
$6,975.43 The respondent added this amount of $6,975.43, less the undeposited checks of $775.17, or $6,200.26, to the unexplained deposits of $21,515.18 in arriving at the $27,715.44 of additional unreported income determined by him. During the years 1945 to 1949, inclusive, petitioner was single and had no dependents. During the years 1937 to 1945 petitioner made it a point to save approximately $250 a month out of his salary. By 1945 petitioner had saved approximately $24,000. *224 He kept this money in his two safety deposit boxes. As of January 1, 1945, petitioner's wealth was approximately $65,000 in cash consisting of his savings, the proceeds from the Bache account and the proceeds from the sale of bonds. During the years 1945 to 1949, inclusive, petitioner did not acquire any real or personal property other than an automobile which he purchased in 1949, his clothing and wearing apparel, and a net increase of about $5,000 in cash. He did not acquire any stocks, bonds, evidences of indebtedness, real property, or interest in real property. On December 31, 1949, petitioner had approximately $70,000 in cash which he kept in his safety deposit boxes. On April 5, 1954, petitioner submitted his resignation to the then Commissioner of the F.H.A. His employment with the F.H.A. was terminated effective as of the close of business on April 13, 1954. No part of any deficiency determined for the taxable years 1945 to 1949, inclusive, was due to fraud with intent to evade tax. The returns filed by petitioner for the taxable years 1945 to 1949, inclusive, were not false or fraudulent returns with intent to evade tax. The deficiencies and additions to the tax are *225 all barred by the statute of limitations. Opinion The principal question is whether the income tax returns filed by petitioner for the taxable years 1945 to 1949, inclusive, were false or fraudulent returns with intent to evade tax. If they were not, the respondent concedes in his brief that the deficiencies and additions to the tax are all barred by the statute of limitations. The question of fraud is always a difficult question to determine. So much depends upon the credibility of the witnesses who testify. For almost 20 years the petitioner now before us held many important positions of trust with the Federal Housing Administration of the Federal Government. During the taxable years 1945 to 1949, petitioner concedes that in addition to his official duties he gambled extensively. He testified that he gambled in the District of Columbia, Maryland, New York, Chicago, and Florida at racetracks, private places, and with bookmakers. He made bets either in person or by telephone. His winnings were paid to him either in cash or by check and he paid his gambling losses in the same manner. He did not keep or maintain any records with respect to these gambling transactions. He filed *226 individual income tax returns for each of the years before us and reported therein his full salary, less some traveling expenses, and claimed deductions for contributions, interest, and taxes. He did not report any gross income from gambling or claim any deductions for gambling losses. He testified that the reason he did not include the result of his gambling transactions in his returns was that he knew at the end of each year that his losses exceeded his gains, and that it was his understanding that when the losses exceeded the gains it was not necessary to report the transactions. It is obvious, of course, that such an understanding was clearly erroneous. Louis Halle, 7 T.C. 245, affd. 175 Fed. (2d) 500 (C.A. 2, 1949), certiorari denied 338 U.S. 949. This does not necessarily mean that petitioner is guilty of fraud for the "Mere omission of reportable income is not of itself sufficient to warrant a finding of fraud in an income tax case." Furnish v. Commissioner, 262 Fed. (2d) 727 (C.A. 9, Dec. 22, 1958), affirming on this issue 29 T.C. 279. The respondent, in the determination of the deficiencies, disallowed all *227 of the travel expenses claimed by petitioner, except for $412 in 1948, disallowed all of the deductions claimed and in lieu thereof allowed the standard deduction for each year, and in addition to these adjustments, determined that under a combination of the bank deposit and cash expenditure methods, petitioner received additional unreported taxable income for each of the years 1945 to 1949, inclusive, in the amounts set out in our findings. The additional income determined by the respondent under the bank deposit method was arrived at simply by excluding from the total bank deposits at Riggs for each year only that portion of petitioner's salary and expense checks and loans which he had deposited with the bank. The respondent made no allowance whatever for any gambling losses sustained by petitioner, although, as set out in our findings, the checks written by petitioner on his account practically equalled his deposits and, in the years 1945 and 1947, they exceeded the deposits. The total deposits for the 5-year period amounted to $176,103.47 and the total checks written amounted to $175,725.58, a difference of only $377.89. We think this tends to corroborate petitioner's testimony *228 that he knew at the end of each year that his gambling losses were in excess of his gambling gains, and also tends to show that the respondent's determination of additional income by means of the bank deposit method was arbitrary. The additional income determined by the respondent under the cash expenditure method is not at all convincing. For instance, in 1948 the additional income of $29,666.28 is the difference between certain expenditures of $32,530.37 set out in our findings and some undeposited checks of $2,864.09. Included in the $32,530.37 are three amounts totaling $27,520 paid to Leibe, DeGrazia and King in settlement of gambling losses. It would seem that such amounts would tend to lessen petitioner's income rather than increase it. Also included in the $32,530.37 are two amounts for Federal income tax withheld of $1,535.90 and Federal salary retirement of $550.84. Clearly these amounts are not additional income. Petitioner reported in his return for 1948 all of his salary for that year, including the two items withheld for income tax and retirement. We think this tends to show that the respondent's determination of additional income by means of the cash expenditures method *229 was incorrect. A great part of the evidence offered by the respondent was for the purpose of attempting to prove that in 1946 petitioner received $10,000 from Albert I. Cassell either as a bribe or by way of extortion. We have not made any finding that petitioner received any such sum from Cassell for the reason that we do not believe the evidence offered by respondent proves that he did. The evidence is conflicting and it would serve no useful purpose to set it out here in detail. Suffice it to say that we have carefully weighed all of the testimony and documentary evidence offered on the point and are not convinced that a bribe was given or an extortion made. Fraud is never presumed. Henry S. Kerbaugh, 29 B.T.A. 1014, affd., 74 Fed. (2d) 749 (C.A. 1). It must be proved by clear and convincing evidence. George L. Rickard, 15 B.T.A. 316; Arlette Coat Co., 14 T.C. 751; Frank Imburgia, 22 T.C. 1002, 1014; W. A. Shaw, 27 T.C. 561, affd., 252 Fed. (2d) 681 (C.A. 6). The burden of proof with respect to such issue is upon the respondent. Section 1112, Internal Revenue Code of 1939. We do not *230 think the respondent has met that burden. Petitioner's net worth on January 1, 1945, was $65,000 and on December 31, 1949, it was $70,000. His salary ranged from $9,413.76 in 1945 to $10,329.80 in 1949. His living expenses consisted of $1,080 per year for rent, about $1,400 a year for food and about $400 a year for clothing. He was unmarried and had no dependents. By December 31, 1949, his net worth had increased only about $5,000. During the years 1945 to 1949 the only tangible personal property he acquired was an automobile for which he paid approximately $4,500. During these years he acquired no stocks, no bonds, no evidences of indebtedness, no real property or any interest in real property. Tested from a net worth basis, we think it is reasonably clear that petitioner did not have any taxable net income during the taxable years 1945 to 1949, inclusive, in excess of the income reported by him. We do not think the combination of the bank deposit and cash expenditure methods used by the respondent shows otherwise. The respondent's determination of taxable net income under those methods was, in our opinion, so questionable as to warrant its disapproval. Helvering v. Taylor, 293 U.S. 507. *231 Cf. United States v. Kleinman, 167 Fed. Supp. 870, U.S. Dist. Ct., E. Dist. of N.Y., Nov. 17 1958. Upon the entire record, we hold that no part of any of the deficiencies herein is due to fraud with intent to evade tax under section 293(b) of the Internal Revenue Code of 1939; that the returns filed were not false or fraudulent returns with intent to evade tax under section 276(a) of the 1939 Code; and that all of the deficiencies and additions to the tax are barred by the statute of limitations. Sec. 275(a), I.R.C. 1939. Decisions will be entered for the petitione Footnotes
*. Error of $30 in addition.↩