T. S. Burnette v. Commissioner.
Burnette v. Commissioner
Docket No. 43593.
United States Tax Court
T.C. Memo 1959-130; 1959 Tax Ct. Memo LEXIS 118; 18 T.C.M. (CCH) 574; T.C.M. (RIA) 59130; June 25, 1959
*118 Held: the business of the Burnette Coal and Heating Company during the years here involved was conducted as a "partnership" as that term is defined in section 3797(a)(2), I.R.C. 1939, with a fiscal year ending on April 30, rather than as a sole proprietorship; the partnership terminated on December 31, 1946, as determined by the respondent; petitioner's individual net income for the calendar years 1945 and 1946 is determined herein; and no part of the deficiencies for the calendar years 1944, 1945, and 1946 is due to fraud with intent to evade tax under section 293(b), I.R.C. 1939. Raymond W. Denney, Esq., and James W. *119 Allen, C.P.A., 1018 Third National Bank Building, Nashville, Tenn., for the petitioner. Raymond Whiteaker, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: The respondent determined deficiencies, an overassessment, and additions to the tax under section 293(b), I.R.C. 1939, for the calendar years 1942 to 1946, inclusive, as follows: Addition
Calendar
Over-
under
Year
Deficiency
assessment
Sec. 293(b)
1942
$ 1,394.89
$ 697.45
1943
1,335.16
667.58
1944
$2,470.05
725.09
1945
10,043.61
6,854.36
1946
15,075.43
10,949.53
In an amendment to amended answer filed December 4, 1957, respondent, under section 272(e), I.R.C. of 1939, makes a claim for an increase in deficiency for 1946 of $7,290.98 and an increase to the addition under section 293(b) for that year of $3,645.50. The respondent has conceded that there are no deficiencies or additions to the tax for the years 1942 and 1943, thus leaving as the only issues: (1) whether the business of the Burnette Coal and Heating Company was a partnership or a sole proprietorship; (2) if held to be a partnership, whether the *120 partnership terminated prior to December 31, 1946; (3) the determination of petitioner's correct net income for each of the calendar years 1945 and 1946; and (4) whether any part of the deficiencies for the calendar years 1944, [1] 1945, and 1946 is due to fraud with intent to evade tax under section 293(b), I.R.C. of 1939. Findings of Fact Some of the facts were stipulated and are so found. Petitioner is an individual residing in Davidson County, Tennessee. During each of the calendar years 1942 to 1946, inclusive, he filed individual income tax returns with the then collector of internal revenue for the district of Tennessee. United States partnership returns of income were filed by petitioner for the Burnette Coal and Heating Company with the then collector *121 of internal revenue for the district of Tennessee for each of the fiscal years ending April 30, 1942, to April 30, 1947, inclusive. In these partnership returns petitioner and W. B. Comer were listed as equal partners, except for the last return in which the partners' shares of income were listed in Schedule I as "T. S. Burnette $36,031.68" and "W. B. Comer $2,000." The date of organization of the business of the Burnette Coal and Heating Company was given as April 19, 1941, and the nature of organization was listed as that of a "partnership." With the exception of the last partnership return, all of the returns, both individual and partnership, were prepared by Comer. Petitioner signed all of the partnership returns as a "partner" under oath. The partnership return for the fiscal year ending April 30, 1947, was prepared by C. A. Balch of the accounting firm of Allen, Martin & Company (now Allen and Company). On June 11, 1948, petitioner filed amended individual income tax returns with the then collector of internal revenue for the district of Tennessee for the calendar years 1944, 1945, and 1946. These amended returns were prepared by James W. Allen of the accounting firm of Allen, *122 Martin & Company (now Allen and Company). In the amended returns the income from the business of Burnette Coal and Heating Company was reported as if the business was that of a sole proprietorship on the calendar year basis instead of that of a partnership on the fiscal year basis. In the amended returns petitioner claimed deductions for "Embezzlement Loss" in the amounts of $13,328.61, $23,201.44 and $6,488.84 for the years 1944, 1945, and 1946, respectively. Petitioner first became interested in a retail coal business which was being operated as the Schott Coal Company in 1934, and later petitioner became the sole owner of the business. In 1936, Malcolm Hogin purchased an interest in the business and F. A. Carter also acquired an interest. The name of the business was changed to Burnette-Hogin Coal Company. Petitioner became the sole owner of the business on April 19, 1941, when he acquired the interests of Hogin and Carter and at that time he changed the name of the business to Burnette Coal and Heating Company. The books and records of the Burnette Coal and Heating Company were on a fiscal year basis ending April 30. Petitioner, who had completed no more than the eighth grade *123 in school, knew almost nothing about bookkeeping and was unable to prepare his own income tax returns. In June 1941 he employed Comer as the bookkeeper and office manager of the Burnette Coal and Heating Company at a salary of $250 per month and authorized Comer to sign checks on the company's bank account with the Commerce Union Bank, Nashville, Tennessee. Comer and petitioner were members of the same lodge and church and petitioner had implicit confidence in Comer's honesty and integrity. Sometime not later than January 1944 Comer and petitioner had some discussion regarding the possibility of Comer's acquiring an interest in the business in addition to his regular salary. As a result of this discussion, it was orally understood that petitioner and Comer would share in the profits on an equal basis. Comer then set up on the books of the Burnette Coal and Heating Company as of April 19, 1941, an "investment" account for petitioner of $12,000, an "investment" account for himself of $3,000, and a "surplus" account of $5,548.27. Comer never paid in the $3,000 set up for himself. During 1944, Comer issued to himself three checks totaling $6,370.65 on the bank account of the Burnette *124 Coal and Heating Company with the Commerce Union Bank and deposited each of them in his personal bank account with the Third National Bank, Nashville, Tennessee. He charged these checks to "Coal, Purchases" on the books of the company. Shortly after the issuance of the above checks, Comer issued three of his personal checks for $1,000 each payable to petitioner. These three checks were cashed by petitioner on February 8, 1944, March 17, 1944, and May 15, 1944, respectively. On his original return for 1944, petitioner reported as a part of his income for that year the amount of $3,639.95 as received from the Burnette Coal and Heating Company. This amount represented one-half of the net income shown on the partnership return of the company for the fiscal year ended April 30, 1944. The partnership returns of income filed for the Burnette Coal and Heating Company for the fiscal years ended April 30, 1945, and April 30, 1946, showed a net income for each year of $8,638.44 and $6,132.58, respectively. This income was grossly understated due to numerous irregularities in Comer's bookkeeping wherein he understated sales, overstated coal and stoker purchases, overstated freight and other *125 expenses, and omitted certain items of income altogether. The correct net income of the Burnette Coal and Heating Company for the fiscal years ended April 30, 1945, and April 30, 1946, was not less than the amounts of $63,225.83 and $48,805.01, respectively, or a net increase in net income of $54,587.39 and $42,672.43, respectively, made up of the above-mentioned irregularities as follows: April 30
1945
1946
Understatement of monthly sales footings and
understatement of accounts receivable footings
in journals
$15,000.00
$ 1,000.00
Purchases of coal overstated
30,605.66
34,111.49
Purchases of stockers overstated
2,413.45
Freight expense overstated
6,319.52
4,165.41
Adjustment to allowable depreciation
(183.92)
(237.55)
Adjustment to bad debt recoveries
68.35
Adjustment for miscellaneous income
1,000.00
Adjustment to allowable payroll expense
935.65
239.82
Adjustment for sales of depreciable assets
500.00
(4,123.00)
Checks charged to various expense accounts for
which there was no substantiation
342.13
535.99
Expenses claimed which have been capitalized
1,254.52
Differences between totals of expense per books and
per return
1,015.05
Unidentified bank deposits
2,297.25
Total Net Irregularities
$54,587.39
$42,672.43
*126 The net income of the Burnette Coal and Heating Company for the 8-month period May 1, 1946, to December 31, 1946, was not less than $33,300.01. In addition to the principal bank account at the Commerce Union Bank, the Burnette Coal and Heating Company since 1941 also carried a business account with the Third National Bank under the name "Burnette Coal & Heating Company" and Comer was also authorized to sign checks on this account. The account with the Third National Bank was inactive from April 1942 until December 1944. In the latter part of 1944, petitioner authorized Comer to transfer funds from the Commerce Union Bank account to the account with the Third National Bank. During the period from December 5, 1944, to May 31, 1946, the total deposits in the Burnette Coal & Heating Company account with the Third National Bank accounted to $51,641.10. On or about December 19, 1944, petitioner withdrew the sum of $1,000 from the Burnette Coal and Heating Company account with the Third National Bank by a check signed by Comer and Comer withdrew a like amount from that account. During the calendar year 1945, petitioner withdrew the total sum of $7,000 from the Burnette Coal and Heating *127 Company account with the Third National Bank by checks signed by Comer and Comer himself withdrew the total amount of $17,000 from that account. On June 15, 1945, a check was drawn on the Burnette Coal and Heating Company account with the Third National Bank, payable to the Burnette Coal and Heating Company in the amount of $42.25. On February 15, 1946, Comer withdrew the sum of $5,000 from the Burnette Coal and Heating Company account with the Third National Bank by a check signed by himself. On June 4, 1946, petitioner withdrew the sum of $7,000 from the Burnette Coal and Heating Company account with the Third National Bank by a check signed by Comer and Comer withdrew a like sum from the same account. On June 7, 1946, the Burnette Coal and Heating Company account with the Third National Bank had a balance of $6,598.85. Somewhere around April 1946 Comer was absent from the business for about 2 months. His wife had passed away and he was supposed to have gone to California. On a Sunday morning in January 1947, petitioner accidentally discovered that Comer had not reconciled the bank balance for several months and in going through the cancelled checks petitioner found that *128 Comer had written numerous checks to cash and had cashed them although he had entered them on the check stubs as being payable to certain railroads for freight. On the following morning petitioner cancelled Comer's authorization to sign Burnette Coal and Heating Company checks at the banks. Petitioner then confronted Comer with what he had discovered, whereupon Comer left the office of the Burnette Coal and Heating Company and told petitioner that he would not be around there any more. After Comer left, petitioner employed Carter Hendricks to keep the books of the Burnette Coal and Heating Company. Hendricks was unable to understand the books, whereupon petitioner, about April 1947, employed the public accounting firm of Allen, Martin & Company (now Allen and Company) to supervise his bookkeeping and accounting. This firm then made a special examination of the books and records of the Burnette Coal and Heating Company for the period from April 19, 1941, to December 31, 1946. This examination was completed on or about September 15, 1948, which was after Allen had filed the previously mentioned amended returns on June 11, 1948. On or about May 29, 1947, Comer returned to the office *129 of the Burnette Coal and Heating Company and had a talk with petitioner, after which both Comer and petitioner signed a document, witnessed by Ruby Wilson, which read as follows: "For and in consideration of Fourteen Thousand Dollars receipt for which is hereby acknowledged, I, W. B. Comer do hereby sell and convey to T. S. Burnette all my interest in the Burnette Coal & Heating Company. It is further agreed and understood that T. S. Burnette as sole owner of the Burnette Coal & Heating Co., is to be responsible for all liabilities covering the operation of the Burnette Coal & Heating Co., both as to the past or the future which might involve said W. B. Comer in any respect." Petitioner did not pay Comer the $14,000 mentioned in the above document at that time. As a result of the discoveries made by the accounting firm of the many irregularities in the books of the Burnette Coal and Heating Company, petitioner brought a suit against Comer in the Chancery Court of Davidson County, Tennessee. That litigation was still pending at the time of the trial of this cause. The respondent determined petitioner's net income for the calendar years 1942, 1943, and 1944 on the net worth basis. *130 The respondent determined that the business of the Burnette Coal and Heating Company was that of a partnership for the period from May 1, 1944 to December 31, 1946. He further determined that the net income of the business for the fiscal year ended April 30, 1945, was $64,197.26 and that one-half of that amount was taxable to petitioner in the calendar year 1945. He further determined that the net income of the business for the fiscal year ended April 30, 1946, and for the 8-month period ended December 31, 1946, amounted to a total of $94,561.61, and that one-half of that amount was taxable to petitioner in the calendar year 1946. The business of the Burnette Coal and Heating Company was that of a partnership for the 2 fiscal years ending April 30, 1945, and 1946, and for the 8-month period ended December 31, 1946. Petitioner and Comer were each entitled to receive one-half of the profits of the business during those fiscal years and period. Petitioner's distributive share of the net income of the partnership for the fiscal year ending April 30, 1945, was $31,612.92. This amount should be included in petitioner's individual net income for the calendar year 1945. Petitioner's *131 distributive share of the net income of the partnership for the fiscal year ending April 30, 1946, was $24,402.51. This amount should be included in petitioner's individual net income for the calendar year 1946. Petitioner's distributive share of the net income of the partnership for the period from May 1, 1946, to December 31, 1946, was $16,650.01. This amount should also be included in petitioner's individual net income for the calendar year 1946. No part of the deficiencies for the years 1944, 1945, and 1946 is due to fraud with intent to evade tax. Opinion Petitioner contends that during all of the years here involved the business of the Burnette Coal and Heating Company was conducted by him as a sole proprietorship; that there never was a partnership between him and Comer; that although he signed all of the partnership returns prepared by Comer and also the last one prepared by the accounting firm, he did it more as a matter of routine without knowledge of the significance of such acts; and that he had no knowledge of the bookkeeping irregularities performed by Comer until they were discovered by the accounting firm employed by petitioner in 1947 after the accidental discovery *132 of some of the irregularities by petitioner himself in January of that year. The respondent determined that the business of the Burnette Coal and Heating Company was that of a partnership until December 31, 1946. By an amendment to amended answer filed December 4, 1957, the respondent affirmatively alleges that the business of the Burnette Coal and Heating Company was that of a partnership only until April 30, 1946. We have carefully considered all of the evidence and have come to the ultimate conclusion that the business of the Burnette Coal and Heating Company was conducted as an equal partnership to and including December 31, 1946, as determined by the respondent in his deficiency notice. We do not think petitioner has proven that there never was a partnership between him and Comer as the term "partnership" is defined in section 3797(a)(2) of the Internal Revenue Code of 1939. [2] Neither do we think the respondent has met his burden of proving that the partnership was dissolved as of April 30, 1946, instead of December 31, 1946, as determined by him in his deficiency notice. *133 Petitioner contends, in the alternative, that if it should be held that petitioner and Comer were partners, then such partnership terminated either on April 30, 1945, or in May 1947 when he and Comer signed the document witnessed by Ruby Wilson. The basis for the first alternative contention is that when Comer prepared petitioner's individual return for the calendar year 1946 he reported in Schedule E thereof the so-called "(Entire Profit)" of the Burnette Coal and Heating Company for the fiscal year ending April 30, 1946, notwithstanding that a partnership return was filed for that business for the fiscal year ending April 30, 1946, and that in Schedule I of the partnership return the reported net income of $6,132.58 was shown as belonging one-half to petitioner and one-half to Comer. Such evidence does not prove that the partnership terminated on April 30, 1945. Neither does the document signed by petitioner and Comer in May 1947 prove that the respondent was wrong in his determination that the partnership terminated on December 31, 1946. It is true that a so-called partnership return was filed for the fiscal year ended April 30, 1947. But this return was not prepared by Comer *134 and, in Schedule I thereof, the so-called "Partners' Shares of Income" were stated as "T. S. Burnette $36,031.68" and "W. B. Comer $2,000.00." We hold that neither party has proved that the partnership terminated on any other date than December 31, 1946, the date determined by the respondent in his deficiency notice. Since the books of the partnership were kept on the basis of a fiscal year ending April 30, it follows that the net income of the partnership must be computed upon the same basis. Sec. 41, I.R.C. 1939. We have found from the evidence that the net income of the partnership for the fiscal years ending April 30, 1945, and April 30, 1946, and for the 8-month period ending December 31, 1946, was $63,225.83, $48,805.01, and $33,300.01, respectively. It follows that one-half of the $63,225.83 should be included in petitioner's individual net income for the calendar year 1945 and that one-half of the other two amounts should be included in petitioner's individual net income for the calendar year 1946. Sec. 188, I.R.C. 1939. Petitioner also contends, in the alternative, that if we should find that the business of the Burnette Coal and Heating Company was conducted as a *135 partnership, then we should hold that no part of the net income for the first 8 months of the partnership for the fiscal year ending April 30, 1945, should be included in petitioner's individual net income for the calendar year 1945 on the ground that the respondent determined petitioner's income tax liability for the calendar year 1944 on the net worth basis and, therefore, theoretically included in petitioner's net income for 1944 all of the net income of the coal business for the calendar year 1944. From this he argues that to include one-half of the net income of the partnership for the entire fiscal year ending April 30, 1945, in petitioner's individual net income for the calendar year 1945 would be duplicating that part of the partnership income for the period from May 1, 1944, to December 31, 1944. Petitioner, upon whom rested the burden, has not shown there would be any duplication. We have found as a fact that the respondent determined petitioner's tax liability for the calendar year 1944 on a so-called "net worth" basis. But the evidence does not show the details of the respondent's determination on that basis. In the absence of such proof, we must assume that the respondent *136 included in petitioner's net income for the calendar year 1944 no more than petitioner's distributive share of the partnership's net income for the fiscal year ending April 30, 1944. [3]
The embezzlement losses claimed by petitioner were claimed in the amended returns on the assumption that the business of the Burnette Coal and Heating Company was conducted as a sole proprietorship rather than as a partnership. Since we have found the latter to be true, this issue in effect becomes moot. Comer, as a partner, was entitled to a share of the profits by agreement, and the withdrawal of a part or all of such profits would not constitute an act of embezzlement for which petitioner would be entitled to a deduction. In any event, on the basis of the coal business being conducted as a partnership, we are unable *137 to determine from the record that Comer in fact embezzled any property belonging to petitioner. We hold, therefore, that petitioner's distributive share of the net income of the partnership for the fiscal years ending April 30, 1945, and April 30, 1946, and for the 8-month period ending December 31, 1946, should not be reduced by any amounts claimed as embezzlement losses. With regard to the issue of fraud, under section 293(b), [4] I.R.C. 1939, the burden of proving fraud is upon the respondent. Sec. 1112, I.R.C. 1939. He must sustain that burden by clear and convincing evidence. George L. Rickard, 15 B.T.A. 316; A. W. Mellon, 36 B.T.A. 977, 1054; Walter M. Ferguson, Jr., 14 T.C. 846, 849, appeal to C.A. 4 dismissed nol. pros.; E. S. Iley, 19 T.C. 631. The evidence offered on this issue is difficult to weight. We have a partner (Comer) of a two-man partnership admittedly preparing false returns with the other member (petitioner) automatically receiving the benefit from a tax standpoint of such falsifications. Petitioner signed the partnership and his own individual returns prepared by Comer without knowing, so he said, that they *138 were false. We believe that to be true. The evidence shows that petitioner knew practically nothing about bookkeeping or the preparation of income tax returns and that petitioner had implicit faith in Comer's ability and integrity. He testified that he did not examine the returns but relied entirely upon the confidence he had that Comer had correctly prepared them. We think this explanation by petitioner finds support in the fact that Comer withdrew his share of the profits in cash while by far the greater part of petitioner's share of the profits appears to have been left in the business in the form of accounts receivables and other working assets such as trucks, equipment, etc. On the other hand, Comer testified on behalf of the respondent that petitioner knew all the time what was going on and that he received his half of the benefit from the fraudulent acts. This, petitioner categorically denies. Petitioner's prompt withdrawal of Comer's right to sign checks upon discovery of the irregularities in the accounts and the ordering of a thorough audit which served to uncover most of the false entries further support petitioner's position. Petitioner no doubt should have paid more attention *139 to the contents of the returns he was signing and there may be some doubt whether he really believed the amounts he withdrew from the business were withdrawals of capital rather than income. On the whole, we do not think the respondent has sustained his burden of proving by clear and convincing evidence that any part of the deficiencies here involved is due to fraud with intent to evade tax and we have so found as a fact. Petitioner was unquestionably negligent in placing so much confidence in Comer, but negligence is not equivalent to the fraud with "intent" to evade tax named in the statute. William W. Kellett, 5 T.C. 608, 618; Walter M. Ferguson, Jr., supra; L. Glenn Switzer, 20 T.C. 759, 764-765; Cleveland Thurston, 28 T.C. 350, 355; John Marinzulich, 31 T.C. 487; Carter v. Campbell, Jr., 264 Fed. (2d) 930 (C.A. 5, Mar. 10, 1959).
*140 Decision will be entered under Rule 50. Footnotes
1. Although we have no jurisdiction to determine the correct net income for 1944 by reason of the overassessment for that year, we do have jurisdiction to determine whether petitioner is liable for the addition determined under section 293(b) for that year. Middleton v. Commissioner, 200 Fed. (2d) 94 (C.A. 5, 1952), affirming a Memorandum Opinion of this Court [10 TCM 592↩; Dec. 18,403(M)].
2. SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.↩
3. It may be noted that the respondent determined petitioner's individual net income for the calendar year 1944 to be the amount of $8,774.67, and that the respondent offered proof that petitioner's distributive share of the net income of the partnership for the fiscal year ended April 30, 1944, was $9,038.37. From this it would appear there was no duplication of income in 1945.↩
4. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. (b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid * * *.↩