DONALD G. SMITH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5448-76.          Filed December 12, 1988.

*James C. Fee, Jr.,* for the respondent.

OPINION

WELLS, *Judge:* Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes:

| Taxable year | Deficiency | Addition to tax sec. 6653(b) [1] |
|---|---|---|
| 1972 | $3,866.78 | $1,933.39 |
| 1973 | 4,962.84 | 2,481.42 |

Respondent has moved that we hold petitioner in default under Rule 123(a) and enter a decision against him for the deficiencies in and additions to tax determined by respondent, including the addition to tax for fraud.

Petitioner was incarcerated in the Federal Penitentiary in Lewisburg, Pennsylvania, at the time he filed his petition.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

The form petition only stated petitioner's reasons for disagreement with the notice of deficiency as follows: "I am at Lewisburg penitentiary and am presently sueing [sic] the I.R.S. in Cleveland, Ohio concerning this investigation. I state my taxes are correct to my knowledge. I am requesting appointed counsel." Petitioner had resided in Ohio prior to being incarcerated.

Respondent's answer denied the substantive allegations of the petition and further alleged:

6. FURTHER ANSWERING the petitioner, and in support of the determination that part of the underpayments of tax required to be shown on the petitioner's income tax returns for the taxable years 1972 and 1973 are due to fraud, the respondent alleges:

(a) During the taxable years 1972 and 1973, petitioner derived taxable income from various sources, including, but not limited to, the following:

(1) Receipts from employment as a production worker with the Goodyear Tire and Rubber Company, Akron, Ohio;

(2) Supplemental unemployment benefits from the Goodyear Tire and Rubber Company, Akron, Ohio;

(3) Receipts from miscellaneous "odd jobs";

(4) Receipts in respect of real property located at 492 Brittain Road, Akron, Ohio, 496 Brittain Road, Akron, Ohio, 1686 Oakwood Avenue, Akron, Ohio, 2924 Pressler Road, Uniontown, Ohio, and 2916 Pressler Road, Uniontown, Ohio;

(5) Receipts from wagering; and

(6) Receipts from narcotics trafficking.

(b) Petitioner failed to maintain, or to submit for examination by respondent, complete and adequate books of account and records of income as required by the applicable provisions of the *Int. Rev. Code of 1954* and the regulations promulgated thereunder.

(1) During the taxable years 1972 and 1973, the petitioner, with intent to evade and defeat taxes, failed to maintain complete and accurate books of account and records of income as required by the applicable provisions of the *Int. Rev. Code of 1954* and the regulations promulgated thereunder.

(c) In the absence of complete and adequate books of account and records of income, respondent has determined petitioner's correct taxable income for each of the taxable years 1972 and 1973 on the basis of the net worth method.

\* \* \* \* \* \* \*

(t) On December 9, 1974, petitioner pleaded guilty in the United States District Court for the Northern District of Ohio of possessing and distributing 40,000 LSD tablets.

Respondent's answer also set forth in detail the facts upon which he based his analysis of petitioner's net worth,

including petitioner's beginning cash on hand, specific assets acquired and liabilities incurred by petitioner during the taxable years in issue, specific expenditures by petitioner for personal living expenses during the years in issue, and specific nontaxable receipts of petitioner during the years in issue. The net worth computation showed an increase in petitioner's net worth for taxable year 1972 in the amount of $13,181.87 and an increase in petitioner's net worth for taxable year 1973 in the amount of $19,782.48.

Petitioner filed with the Court a document entitled "Rebuttal to Respondent's Answer," which made various accusations against respondent and demands over which this Court has no jurisdiction. That document was filed by the Court as petitioner's reply, and only generally disputed the allegations contained in respondent's answer. Respondent did not file with the Court any request for admissions; nevertheless, petitioner filed a "Response to Respondent's First request for Admissions" on April 13, 1978. That response also did not deny specifically any of the allegations in respondent's answer.

On July 1, 1977, respondent filed a motion to change the place of trial from Philadelphia to Cleveland, and petitioner filed a response in opposition to that motion. On August 14, 1977, a hearing on that motion was attended by petitioner, and the motion was denied. On March 5, 1981, petitioner's address was changed on all Court records to the Federal Correctional Institute, Oxford, Wisconsin (the Oxford, Wisconsin, address). On June 2, 1987, the Court issued a trial notice setting the case for trial on November 2, 1987, in Philadelphia. That notice was mailed to the Oxford, Wisconsin, address and read in pertinent part as follows:

The calendar for that Session will be called at 10:00 a.m. on that date and both parties are expected to be present at that time and be prepared to try the case. YOUR FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU.

Your attention is called to the Court's requirement that, if the case cannot be settled on a mutually satisfactory basis, the parties, *before trial*, must agree in writing to *all* facts and *all* documents about which there should be no disagreement. Therefore, the parties should contact each other promptly and cooperate fully so that the necessary steps can be taken to comply with this requirement. YOUR FAILURE TO

COOPERATE MAY ALSO RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU.

On September 2, 1987, September 16, 1987, and October 13, 1987, respondent's counsel sent petitioner letters addressed to the Oxford, Wisconsin, address. The September 16, 1987, letter was forwarded to an address in Akron, Ohio (the Akron, Ohio, address) used by petitioner prior to the Oxford, Wisconsin, address. All three letters, however, were returned to respondent as undeliverable.

Respondent attempted to determine petitioner's address through respondent's computer records and found that petitioner had used the Akron, Ohio, address, for his 1985 and 1986 tax returns. In October of 1987, respondent was informed by the Federal Inmate Locator Service that petitioner was released on parole from a halfway house in Ohio on May 9, 1984. On October 26, 1987, respondent sent petitioner another letter along with a copy of respondent's trial memorandum by express mail to the Akron, Ohio, address. Respondent received no reply.

Petitioner failed to appear at the call of the instant case from the calendar on November 2, 1987. Respondent filed a written motion to hold petitioner in default and to enter a decision against petitioner for the deficiencies in and additions to tax determined by respondent, including the additions to tax for fraud. The Court served a copy of the motion on petitioner at both the Oxford, Wisconsin, address and the Akron, Ohio, address.[2]

Respondent must prevail on the underlying deficiencies on the ground either that petitioner has defaulted by not appearing at trial or that he has failed to carry his burden of proof. *Doncaster v. Commissioner*, 77 T.C. 334, 336 (1981).

Respondent, however, bears the burden of proving by clear and convincing evidence that petitioner is liable for the additions to tax for fraud. Sec. 7454(a); Rule 142(b). See *Grosshandler v. Commissioner*, 75 T.C. 1, 19 (1980).

We have held that the Commissioner may satisfy his burden of proving liability for the addition to tax for fraud

---

[2]There is no indication in the Court's records that petitioner did not receive either the notice setting case for trial or respondent's motion to hold petitioner in default. Rule 21(b)(4) requires parties to notify the Court of any change of mailing address.

with deemed admissions (see *Marshall v. Commissioner*, 85 T.C. 267 (1985); *Doncaster v. Commissioner, supra; Gilday v. Commissioner*, 62 T.C. 260 (1974)), as a consequence of imposed sanctions (see *Rechtzigel v. Commissioner*, 79 T.C. 132 (1982), affd. on another issue 703 F.2d 1063 (8th Cir. 1983); *Marcus v. Commissioner*, 70 T.C. 562 (1978), affd. in an unpublished opinion 621 F.2d 439 (5th Cir. 1980)), or by a clear indication on the part of the taxpayer that he no longer would contest the fraud issue (see, e.g., *Simmons v. Commissioner*, 73 T.C. 1009 (1980); *Gordon v. Commissioner*, 73 T.C. 736 (1980)).

None of those elements, however, are present in the instant case. We thus are faced squarely with the issue of whether a taxpayer who does not appear at trial can be held liable for an addition to tax for fraud without the introduction into the record of evidence of fraud sufficient to carry respondent's burden of proof. In *Miller-Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931), we held that a taxpayer could not be held liable for an addition to tax for fraud absent such evidence. The question then is whether *Miller-Pocahontas Coal Co.* precludes the grant of respondent's motion in the instant case.

As a threshold matter, it is important to note that a charge of fraud is a serious matter that must be proved by clear and convincing evidence.[3] *Kerbaugh v. Commissioner*, 29 B.T.A. 1014, 1016 (1934), affd. per curiam 74 F.2d 749 (1st Cir. 1935). The fact remains, however, that the addition to tax for fraud is a civil rather than a criminal provision, enacted "primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering v. Mitchell*, 303 U.S. 391, 401-402 (1938).

The Board of Tax Appeals held in *Miller-Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. at 1361, that deficiencies in

---

[3]The standard of proof requiring clear and convincing evidence does not appear in sec. 7454(a). The legislative history of sec. 7454(a) and its predecessor does not reveal any indication of any such standard. H. Rept. 1337, 83d Cong., 2d Sess. A433 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 612 (1954); S. Rept. 960 (Conf.), 70th Cong., 1st Sess. 38 (1928), 1939-1 C.B. (Part 2) 409, 436; H. Rept. 1882 (Conf.), 70th Cong., 1st Sess. 21 (1928), 1939-1 C.B. (Part 2) 444, 452. The standard has been judicially developed. See *Rickard v. Commissioner*, 15 B.T.A. 316, 317 (1929), which appears to be the seminal case and establishes the standard without discussion. See also *Gano v. Commissioner*, 19 B.T.A. 518, 533 (1930).

tax and additions to tax were separate items and that section 906(c) of the Revenue Act of 1924, 43 Stat. 253, 336, as amended by the Revenue Acts of 1926 and 1928, "provide[d] that a dismissal shall require an affirmance of the deficiency only." The Board thus concluded that it lacked the capacity to default a taxpayer on the fraud issue. Recognizing that the burden of proving fraud is on the Commissioner, the Board also observed, "Congress, knowing that the presumption [of correctness] is generally with the Commissioner, took it from him when he determined a fraud penalty and announced that, in any proceedings before the Board, the taxpayer should be regarded as free from such fraud until respondent has supported his determination by sufficient evidence." *Miller-Pocahontas Coal Co. v. Commissioner, supra* at 1361.

As we look forward from 1931, however, we find that the present-day vitality of *Miller-Pocahontas Coal Co.* has been eroded by several developments. First, section 6662[4] (formerly 6659) provides that additions to tax are to be treated as part of the "tax" and assessed and collected in the same manner as taxes. That provision is clearly intended to cover the deficiency procedures, including proceedings in this Court. See H. Rept. 1337, 83d Cong., 2d Sess. A420 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 595 (1954). See also H. Rept. 1217, 86th Cong., 2d Sess. 2 (1960), 1960-1 C.B. 840; S. Rept. 1098, 86th Cong., 2d Sess. 2 (1960), 1960-1 C.B. 843. Thus, the "deficiency" rationale of *Miller-Pocahontas Coal Co.* no longer has any validity. See, e.g., *Eisele v. Commissioner,* 580 F.2d 805 (5th Cir. 1978), affg. an unpublished order of this Court; *McCoy v. Commissioner,* 76 T.C. 1027 (1981), affd. 696 F.2d 1234 (9th Cir. 1983), where taxpayers' petitions have been dismissed and the Commissioner's determinations of deficiencies *and* additions to tax upheld. See also *Rechtzigel v. Commissioner,* 79 T.C. at 141 n. 7; *Doncaster v. Commissioner,* 77 T.C. at 346-347

---

[4]Sec. 6662 provides:

Sec. 6662(a). Additions Treated as Tax.—Except as otherwise provided in this title—

(1) The additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes;

(2) Any reference in this title to "tax" imposed by this title shall be deemed also to refer to the additions to tax, additional amounts, and penalties provided by this chapter.

(Wilbur, J., concurring). Compare *Estate of Di Rezza v. Commissioner*, 78 T.C. 19 (1982).

Second, the continued vitality of *Miller-Pocahontas Coal Co.* has been questioned in recent years. In *Doncaster v. Commissioner, supra* at 345, Judge Wilbur noted in a concurring opinion that:

As a matter of statutory construction, our decision in *Miller-Pocahontas* has always been open to criticism. Our jurisdiction to determine whether a taxpayer is liable for an addition to tax was inferred from our authority to determine the correctness of respondent's asserted *deficiencies* (see *Gutterman Strauss Co. v. Commissioner*, 1 B.T.A. 243, 247-249 (1924)), and is supported by the congressional declarations that "additions to tax * * * shall be assessed, collected, and paid in the same manner as taxes" and that "Any reference * * * to 'tax' * * * shall be deemed also to refer to the additions to the tax." Sec. 6659(a); compare id. with sec. 275(b), Revenue Act of 1924, Pub. L. 176, 43 Stat. 298. * * *

See also *Rechtzigel v. Commissioner*, 79 T.C. at 140-142; *Gordon v. Commissioner* 73 T.C. at 742.

Third, in numerous cases we have relieved the Commissioner of the burden of putting on his case for the addition to tax for fraud where deemed admissions have resulted from the taxpayer's failure to respond to certain procedural devices contained in our rules. Those cases have involved requests for admissions (Rule 90(c)), motions to have affirmative allegations of answers deemed admitted (Rule 37(c)), or motions to have facts in proposed stipulations deemed admitted (Rule 91(f)). See, e.g., *Marshall v. Commissioner, supra; Doncaster v. Commissioner, supra; Gilday v. Commissioner, supra.* We also have relieved the Commissioner of his burden where taxpayers have acted in such a manner that sanctions have been imposed on them. See, e.g., *Rechtzigel v. Commissioner, supra*, and the cases cited therein at n. 8; *Marcus v. Commissioner, supra.* Consequently, the Commissioner's requirement to adduce evidence sufficient to carry his burden of proof may now be relieved by the failure of a taxpayer to respond to the Commissioner's procedural attempts to have allegations of fact deemed admitted. Because the taxpayer's failure to respond (after failing to cooperate with respondent in the pretrial process) occurs no later in the proceedings than the taxpayer's failure to appear at trial in a case in which the Commis-

sioner makes no such attempt, the only reason to treat one failure to respond differently from the other is that one provides "proof" of fraud through deemed admissions under our Rules while the other, theoretically, does not. As we will discuss below, we think that distinction to be superannuated and without relevance in present-day proceedings in this Court.

Fourth, the Court adopted Rule 123(a),[5] effective January 1, 1974, which provides that a party may be held in default when he "has failed to plead or otherwise proceed as provided by these Rules or as required by the Court." See Note to Rule 123(a), 60 T.C. 1129. The action or non-action on the part of a taxpayer that constitutes sufficient grounds to apply Rule 123(a) in proceedings before us is a matter for us to determine in our discretion. In this connection, we note that it is possible to conclude that petitioner's inaction in the instant case constitutes an abandonment. Cf. *Simmons v. Commissioner*, 73 T.C. 1009 (1980); *Gordon v. Commissioner*, 73 T.C. 736 (1980). In any event, Rule 123(a) was not in existence at the time *Miller-Pocahontas Coal Co.* was decided. Given the statement in Rule 123(a) that the Court "in its discretion" may require that evidence be adduced prior to the entry of decision following default, an argument thus could be made that the adoption of Rule 123(a) effectively overruled *Miller-Pocahontas Coal Co.* to the extent that case adopts a per se rule *requiring* such evidence in every fraud case.

Last, in our recent case of *Bosurgi v. Commissioner*, 87 T.C. 1403 (1986), we held that a default could be entered against the taxpayer even though the Commissioner had the burden of proof. In *Bosurgi*, the taxpayer was a transferee of certain assets of an estate. There we held that "the entry of a default has the effect of admitting all well-pleaded facts in respondent's answer, and a default judgment must be

---

[5]Rule 123(a) provides:

(a) Default: When any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, he may be held in default by the Court either on motion of another party or on the initiative of the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate. The Court may, in its discretion, conduct hearings to ascertain whether a default has been committed, to determine the decision to be entered or the sanctions to be imposed, or to ascertain the truth of any matter.

supported by respondent's well-pleaded facts."[6] *Bosurgi v. Commissioner,* 87 T.C. at 1409. While noting that the issue of fraud was not involved, we stated in *Bosurgi* (87 T.C. at 1408):

If a taxpayer does not think well enough of his case to defend it where the Government has the burden of proof, this Court should default him. To hold a trial in a case abandoned by the taxpayer is at best an indulgence of archaic manners and at worst an insult to the taxpayers who have a rightful claim on this Court's time. * * *

In a transferee case such as *Bosurgi,* the Commissioner has the burden of proof, as he does where the fraud addition has been determined. The fact that the Commissioner's burden to prove fraud by clear and convincing evidence is greater than his burden to prove transferee liability by a preponderance of the evidence, however, is not a sufficient distinction to prohibit defaulting a taxpayer who fails to appear for trial. We believe, rather, that the greater standard of proof only affects the sufficiency and adequacy of the facts required to meet the burden. In numerous cases where the Commissioner relies on deemed admissions, we have sustained the fraud addition. E.g., *Marshall v. Commissioner, supra; Doncaster v. Commissioner, supra; Gilday v. Commissioner, supra.* We have not been reluctant to hold that the Commissioner has satisfied his burden of proof on a clear and convincing basis where only deemed admissions of facts support the assertion of fraud. In such cases, we do not require the Commissioner to adduce evidence beyond those deemed admissions. Because the effect of a default is to establish the well-pleaded facts of the nondefaulting party, the establishment of such facts through a default is no different than establishing such facts through deemed admissions. The establishment of facts through deemed admissions is now a well-settled means of proving fraud and in effect has undermined any continued vitality of *Miller-Pocahontas Coal Co.* in light of our opinion in *Bosurgi.* When a taxpayer refuses to cooperate with the Commissioner and with the Court, it is patently absurd, as Judge

[6]We subsequently have applied *Bosurgi* to default a taxpayer on delinquency and negligence additions under secs. 6651(a)(1) and 6653(a), respectively, where the Commissioner had the burden of proof because he raised the additions for the first time in his answer. *Martin v. Commissioner,* 89 T.C. 894 (1987).

Wilbur noted in his concurring opinion in *Doncaster v. Commissioner*, 77 T.C. at 344-345, to—

recite a litany of "deemed" admissions, "find" facts not disputed, and then "decide" the case as best we can, issuing a written opinion in every case. See, e.g., *Brown v. Commissioner*, T.C. Memo. 1981-294. Often we have a "trial," the respondent putting on his case without the presence or participation of the taxpayer. These little one-act pantomimes complete with briefs and an opinion are a charade in which we can no longer indulge. The enormous growth in our caseload requires that we recognize the inconvenience these useless and futile histrionics impose on other citizens having business before this Court.

Thus, to complete the process of giving *Miller-Pocahontas Coal Co.* its proper burial, the only formality remaining is for us to overrule it explicitly by uttering the words *"Miller-Pocahontas Coal Co.* is overruled." In overruling *Miller-Pocahontas Coal Co.*, however, we leave this admonition: the Commissioner's pleadings must allege specific facts sufficient to sustain a finding of fraud before he will be entitled to a decision that includes an addition to tax for fraud upon the failure of a taxpayer to appear for trial. We believe such a safeguard is necessary as a deterrent against the automatic imposition of the fraud addition on unwary taxpayers.

Turning to the instant case, it is clear to us that petitioner "has failed to plead or otherwise proceed." Rule 123(a). Petitioner has failed to communicate with the Court (not having apprised the Court of any change of address since 1981); he has failed to appear at the trial (of which he was given more than sufficient advance notice); and he has failed to participate in the preparation of the case for trial. In particular, he did not comply with the requirements of Rule 91(a) with regard to the preparation of a stipulation of facts, in spite of the Court's warning in its notice setting case for trial and its pretrial order. See *Miller v. Commissioner*, 654 F.2d 519, 521 (8th Cir. 1981), affg. per curiam an unreported decision of this Court; *Branerton Corp. v. Commissioner*, 61 T.C. 691, 692 (1974) ("For many years the bedrock of Tax Court practice has been the stipulation process, now embodied in Rule 91"). Entry of a default decision for the fraud addition in the instant case therefore is appropriate upon a determination in our "sound judicial

discretion" that the pleadings set forth sufficient facts to support such a judgment. Cf. *Bosurgi v. Commissioner*, 87 T.C. at 1408.

We thus must decide whether respondent's specific allegations of fact in the instant case, if taken to be true by petitioner's default, are sufficient to establish the existence of fraud. The evidence of petitioner's unreported income consists of respondent's net worth analysis, which must be examined within the context of the standards enunciated in *Holland v. United States*, 348 U.S. 121, 132-138 (1954). The *Holland* standards require that the Commissioner establish, with reasonable certainty, an opening net worth, and that he either have conducted a reasonable investigation of leads negating possible sources of nontaxable income or have established a likely source of unreported taxable income. *Brooks v. Commissioner*, 82 T.C. 413, 431-432 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985).

Petitioner did not appear for the trial of this case to dispute respondent's allegations. We therefore find that the opening net worth of respondent's net worth analysis is correct and that petitioner's sources of unreported taxable income are as alleged by respondent; thus, the *Holland* standards are satisfied.

Respondent's net worth analysis establishes a pattern of underreporting of substantial amounts of income by petitioner during the taxable years in issue. Petitioner's pattern of acquiring substantial assets while reporting nominal income on his returns is evidence that petitioner knew that he substantially had understated his income and substantially underpaid his tax. *Brooks v. Commissioner*, 82 T.C. at 432. Petitioner's failure to keep records is also a badge of fraud. *Bradford v. Commissioner*, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Moreover, petitioner's plea of guilty to engaging in an illegal activity, distribution of LSD, is another of the indicia of fraud.[7] *Bradford v. Commissioner*, *supra*; *Meier v. Commissioner*, 91 T.C. 273, 298 (1988). Last, petitioner failed to appear for trial—an additional indication of a deliberate

---

[7] Such an activity also supports respondent's pleading that narcotics trafficking is a likely source of unreported taxable income to petitioner.

effort by petitioner to conceal the true facts concerning his tax liability.[8]

Our review of the entire record in this case, including the well-pleaded facts contained in respondent's answer, satisfies us that the additions to tax for fraud should be sustained by entry of a default against petitioner and the dismissal of his case on the merits pursuant to Rule 123(a).

In the instant case, petitioner filed a petition; a request for trial at Philadelphia, Pennsylvania; a reply; a response to respondent's motion to change place of trial; and another response document. Thereafter, it has been several years since the Court has received any communication from petitioner. Petitioner appears to have abandoned his case, and we believe it appropriate to exercise our discretion to enter a default against petitioner, including the addition to tax for fraud.

> *Respondent's motion will be granted, and decision will be entered for the respondent.*

Reviewed by the Court.

NIMS, PARKER, WHITAKER, KÖRNER, CLAPP, SWIFT, JACOBS, GERBER, RUWE, and COLVIN, *JJ.*, agree with the majority opinion.

---

WHALEN, *J.*, concurring: I concur with the result the majority reaches today, and agree that the specific allegations of fraud made by respondent, and taken to be true by reason of petitioner's default, are sufficient to satisfy respondent's burden of proof in this case. I also endorse the majority's view that we should not require respondent to undertake the charade of putting on evidence to meet his burden of proof when he has affirmatively pleaded facts sufficient to sustain fraud, and petitioner then fails to deny those facts and appear for trial.

I disagree, however, that it is necessary to overrule the Board of Tax Appeals' decision in *Miller-Pocahontas Coal Co. v. Commissioner,*, 21 B.T.A. 1360 (1931) (*Miller-*

---

[8]See *Bierschbach v. Commissioner,* T.C. Memo. 1988-199; *Baldwin v. Commissioner,* T.C. Memo. 1984-119.

*Pocahontas*). That decision is entirely consistent with the result the majority reaches today.

In *Miller-Pocahontas,* there were no well-pleaded facts sufficient to establish the taxpayer's liability for fraud. Rather, in response to the taxpayer's petition, respondent "answered denying all the facts." *Miller-Pocahontas, supra* at 1360-1361. Because respondent alleged nothing to be taken as true by the taxpayer's default, respondent "offered no proof of fraud to sustain the 50 per cent penalty," and the Board concluded that mere dismissal "in the absence or insufficiency of [such] evidence" could not support the fraud penalty determined by respondent. *Miller-Pocahontas, supra* at 1361.

The majority seems to misinterpret *Miller-Pocahontas* as establishing the per se rule that we cannot grant respondent a default judgment for fraud under any circumstances. The holding in *Miller-Pocahontas,* however, is completely reconcilable with the result the majority reaches today. Both stand for the proposition that absent respondent's allegations of fact, in effect admitted and taken to be true by the taxpayer's default, dismissal cannot support fraud. In *Miller-Pocahontas,* respondent made no such allegations; in the case before us, he did. Because of this material factual difference, which the majority overlooks, *Miller-Pocahontas* contains no inconsistent rule of law that must be overruled in order to accommodate the result we reach today. Instead, the majority could have based its decision on extant law.

If the majority is concerned with any gloss which it feels the years have placed on *Miller-Pocahontas,* i.e., that this Court lacks the capacity in all cases to default a taxpayer on the issue of fraud, it should remove that gloss, not overrule the case. Similarly, if the majority believes that a default before this Court is materially different, by virtue of our status as an article I court and our current Rules of Practice and Procedure, from a default before our predecessor, an article II Board, then the majority should distinguish the Board's decision on such ground, rather than overrule it.

I would hold for respondent, but, on grounds of judicial restraint and stare decisis, not overrule *Miller-Pocahontas.* Judicial restraint suggests that this Court reserve its

prerogative to overrule a prior opinion for only those situations where the prior opinion, rendered vulnerable to reconsideration by intervening circumstances, is irreconcilable with the Court's current position. To overrule a case which can be factually distinguished is a waste of judicial power. Furthermore, "we do not lightly decline to follow one of our prior decisions." *Threlkeld v. Commissioner,* 87 T.C. 1294, 1304 (1986), affd. 848 F.2d 81 (6th Cir. 1988); *Sylvan v. Commissioner,,* 65 T.C. 548 (1975).

Stare decisis, though not inflexible, demands "special justification" for departure from precedent. *Arizona v. Rumsey,* 467 U.S. 203, 212 (1984); *Akron v. Akron Center for Reproductive Health,* 462 U.S. 416 (1983); *Helvering v. Hallock,* 309 U.S. 106 (1940). As the Supreme Court recently stated, stare decisis is:

the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. * * * While stare decisis is not an inexorable command, the careful observer will discern that any detours from the straight path of stare decisis in our past have occurred for articulable reasons, and only when the Court has felt obliged "to bring its opinions into agreement with experience and with facts newly ascertained." *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 412 (Brandeis, J., dissenting).

Our history does not impose any rigid formula to constrain the Court in the disposition of cases. Rather, its lesson is that every successful proponent of overruling precedent has borne the heavy burden of persuading the Court that changes in society or in the law dictate that the values served by stare decisis yield in favor of a greater objective. * * *

[*Vasquez v. Hillery,* 474 U.S. 254, 265-266 (1986).]

We are not at liberty to abandon our predecessor's decision lightly. Because the majority could arrive at the same result without overruling *Miller-Pocahontas,* it should accord that decision continued vitality.

WILLIAMS, *J.,* agrees with this concurring opinion.

---

SHIELDS, *J.,* dissenting: I am in agreement with the dissent by Judge Cohen (p. 1066), but I feel that the following comments are also needed.

First, even though there is no extensive discussion in the legislative history of section 7454(a) as to the rationale for imposing upon respondent the burden of proof with respect

to fraud, such imposition is clearly in line with the long-established principle that:

> The rules which impose the burden of proof on one alleging fraud and which deny a presumption of fraud rest on the fact that fraud is regarded as criminal in its essence, and involves moral turpitude at least, while on the other hand, the presumption is that all men are honest, that individuals deal fairly and honestly, that private transactions are fair and regular, and that participants act in honesty and good faith. The presumption is against the existence of fraud and in favor of innocence, the presumption against fraud approximating in strength the presumption of innocence of crime. * * * [37 C.J.S., Fraud, sec. 94 (1943); fn. refs. omitted.]

See also 37 Am. Jur. 2d 596-597 (1968), where the principle is stated as follows:

> The party who alleges fraud as the basis of a cause of action or defense has the burden of establishing it by the requisite quantum of proof in order to prevail in the action. Since in the absence of particular circumstances the presumption is in favor of good faith, innocence, and honesty, and against fraud, the party who alleges fraud ordinarily must carry the burden of producing evidence to prove it. * * * [Fn. refs. omitted.]

It would appear, where as in this case, respondent produces no proof of fraud either by deemed admissions or otherwise, the strong presumption against fraud would carry the issue for petitioner.

Secondly, Rule 123(a) is derived from rule 55(a) and (b) of the Federal Rules of Civil Procedure (FRCP) which deals with defaults. Rule 123(b) is derived from FRCP 41(b) which deals with dismissals. Since Rule 123(a) and (b) was derived from the FRCP, the case law under the Federal Rules of Civil Procedure is helpful in determining the scope of Rule 123(a) and (b). *Gordon v. Commissioner,* 73 T.C. 736, 741 (1980).

In *Bosurgi v. Commissioner,* 87 T.C. 1403, 1407 (1986), we pointed out that by analogy to FRCP 55(a), the party that bears the burden of proof in a Tax Court case is entitled to move for entry of a default pursuant to Rule 123(a) and by analogy to rule 41(b), the party that does not bear the burden of proof may move for dismissal pursuant to Rule 123(b).

The significant difference between FRCP 55 and 41, and by analogy between Rules 123(a) and 123(b), is the different

standards which must be met before the rules apply. Under rule 41(b), a defendant (the party without the burden of proof—respondent on the deficiency issue in the Tax Court) may move for dismissal for failure of the plaintiff (petitioner) to prosecute or to comply with the FRCP or any order of the court. Conversely, under rule 55 a default is available to the party with the burden of proof (respondent on the issue of fraud) when the other party (petitioner) has failed to "plead or otherwise defend" as provided by the FRCP.

The phrase "otherwise defend" as used in rule 55 refers to defenses and objections available to a defendant by motion prior to filing an answer as indicated by the following:

> The words "otherwise defend" refer to the interposition of various challenges to such matters as service, venue, and the sufficiency of the prior pleading, any of which might prevent a default if pursued in the absence of a responsive pleading. [See rule 12(b), FRCP.] As stated by the court in *Bass v. Hoagland* [172 F.2d 205, 210 (5th Cir. 1949), cert. denied 338 U.S. 816.]:

> Rule 55(a) authorizes the clerk to enter a default "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." This does not require that to escape default the defendant must not only file a sufficient answer to the merits, but must also have a lawyer or be present in court when the case is called for a trial. The words "otherwise defend" refer to attacks on the service, or motions to dismiss, or for better particulars, and the like, which may prevent default without presently pleading to the merits.

> [10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, sec. 2682, at 409-410 (2d ed. 1983); fn. refs. omitted.]

In *Bass v. Hoagland,* 172 F.2d 205, 210 (5th Cir. 1949), the court continued by stating:

> When Bass by his attorney filed a denial of the plaintiff's case neither the clerk nor the judge could enter a default against him. The burden of proof was put on the plaintiff in any trial. *When neither Bass nor his attorney appeared at the trial, no default was generated; the case was not confessed. The plaintiff might proceed, but he would have to prove his case.* [Emphasis added.]

Nevertheless, there is some authority for treating "failure to defend" as used in rule 55 as the reverse side of "failure to prosecute" as used in rule 41. See *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61 (2d Cir. 1981), where the court

found that a defendant's nonappearance at a deposition, dismissal of counsel, vague and unresponsive answers to interrogatories, and failure to appear at trial were sufficient to support a finding that he had "failed to plead or otherwise defend" under rule 55. However, in his treatise, Moore argues that rule 55 is not adapted to that end. 6 J. Moore, M. Taggart & J. Wicker, Moore's Federal Practice, par. 55.03(1), at 55-14 (2d ed. 1988).

Thus, a default under rule 55 of FRCP appears to be available only when a defendant fails to file an answer or make a motion under FRCP 12(b) which is required to be made before pleading. Once an answer is filed it appears that a default under rule 55 is no longer available. However, rule 55 is not the only authority in the FRCP for the entry of a default judgment. For example, FRCP 37 authorizes a judgment by default as a sanction for failure to comply with a discovery order, failure to appear for a deposition, failure to serve answers or objections to interrogatories, or failure to respond to a request for the production or inspection of documents. Of course, we have similar authority under Rule 104.

In the case before us, the majority concludes that petitioner has failed to plead or otherwise proceed under Rule 123(a) by failing to communicate with the Court, failing to appear at trial, failing to participate in preparation of the case for trial, and particularly failing to comply with Rule 91(a) with regard to the preparation of a stipulation of facts. In similar situations in the past we have entered a decision including the addition to tax for fraud, against the petitioner as a sanction under Rule 104. *Rechtzigel v. Commissioner,* 79 T.C. 132 (1982), affd. 703 F.2d 1063 (8th Cir. 1983), citing cases arising under FRCP 37 from which 104 was derived.

In final analysis, I am convinced that a default in this case under Rule 123(a) is neither proper for the reasons set forth above nor necessary because the same result could be obtained as in *Rechtzigel* by means of a sanction under Rule 104. Such a disposition would not only be in accordance with Rule 123 and FRCP 37, 41, and 55, but would avoid overruling *Miller-Pocahontas Coal Co. v. Commissioner,* 21 B.T.A. 1360 (1931), which has been on the books

for over 50 years. It would also avoid the concern which exists (1) with respect to the nature and amount of proof which the respondent has to produce in order to overcome the presumption against fraud, and (2) with respect to default judgments generally. With respect to the latter see 10 C. Wright, A. Miller & M. Kane, *supra,* sec. 2681, and at 402, where it is stated:

> Under modern procedure, defaults are not favored by the law and any doubts usually will be resolved in favor of the defaulting party. As the court said in *Janoske v. Porter,* [64 F.2d 958, 961 (7th Cir. 1933)]:
>
> "The default of a party to an action is always a harsh measure, and no party should ever be defaulted, unless the grounds upon which such default is authorized are clearly and authoritatively established and are in such clear and certain terms that the party to be defaulted can know, without question, that he is subject to default if he does not act in a certain manner."
>
> The reason for this attitude is that contemporary procedural philosophy encourages trial on the merits. Defaults especially are disfavored in certain actions. One general class of cases of this type consists of actions involving material issues of fact. Another is litigation in which substantial amounts of money are involved. Policy also weighs heavily in favor of trial on the merits and against default judgments in cases calling into question the constitutionality of a state statute or raising other significant public issues.
>
> [Fn. refs. omitted.]

Almost all fraud cases involve material issues of fact and the amount in litigation is almost always substantial inasmuch as it is 50 percent of the understatement of tax. Furthermore, the entry of a default judgment in favor of respondent for the amount of the addition to tax without the introduction of any evidence would in my opinion constitute a significant public issue.

CHABOT, COHEN, WRIGHT, and PARR, *JJ.,* agree with this dissent.

---

COHEN, *J.,* dissenting: The majority opinion sets forth an appealing argument for expediency based on the premise that the statutory rationale of *Miller-Pocahontas Coal Co. v. Commissioner,* 21 B.T.A. 1360 (1931), is obsolete. The holding of that case, in my view, should persist in spite of the ravages of time. The Commissioner there made a pragmatic argument that the taxpayer's failure to appear

put him in the same position as if no petition had been filed. The response was:

As soon as the petition is filed and the * * * [Court] has jurisdiction, the disposition of the issues must be made by the * * * [Court] in accordance with the prescribed rules of procedure and of evidence; and we see no reason to suppose that the Commissioner was intended to be entirely relieved of his burden of proof as to fraud when the taxpayer fails to appear. It may be that the lack of opposition lightens the burden as a practical matter; but respondent is entitled to no more. [21 B.T.A. at 1362.]

Congress long ago placed the burden of proof of fraud on respondent, and there is no indication that Congress would change that burden. Section 7454(a) is derived from a provision in the Revenue Act of 1928 that originated in the Senate and was agreed to by the House of Representatives. H. Rept. 1337, 83d Cong., 2d Sess. A433; S. Rept. 1662, 83d Cong., 2d Sess. 612 (1954); S. Rept. 960, 70th Cong., lst Sess. 38 (1928), 1939-1 C.B. (Part 2) 409, 436; H. Rept. 1882 (Conf.), 70th Cong., lst Sess. 21 (1928), 1939-1 C.B. (Part 2) 444, 452. Although there is no extensive discussion in that history as to the rationale of Congress in imposing the burden of proof of fraud on respondent, enactment of the provision followed testimony of the chairman of the committee on federal taxation of the American Bar Association that:

it seems to us thoroughly contrary to the ordinary principles of Anglo-Saxon and American jurisprudence that the taxpayer should have the burden of proof in negating the fact that there was fraud. [Statement of Hugh Satterlee, Esq., Hearings Before Senate Finance Committee, 70th Cong., lst Sess. 16.]

The Finance Committee announced its decision to add to the law the predecessor of section 7454(a), as follows:

Proceedings before the Board [Board of Tax Appeals] involving that issue [fraud] in some respects resemble penal suits. The committee feels that the Commissioner should be placed in the position of party plaintiff and *compelled to carry the burden of proving fraud whenever it is an issue in the case.* * * * [S. Rept. 960, *supra* at 38, 1939-1 C.B. (Part 2) at 435-436. Emphasis supplied.]

I agree with and would defer to the policy adopted by Congress. I believe that the underlying rationale precludes

rendering a default judgment against the taxpayer on a fraud issue merely because he or she fails to appear. Some proof of facts supporting the claim of fraud must be presented. The majority opinion here eliminates the burden on respondent to prove fraud, requiring absolutely no evidence to be placed in the record.

Indeed, we have held in prior cases that proof may consist of deemed admissions resulting from application of our rules. Requiring respondent to substantiate allegations of fraud with specific factual statements leading to deemed admissions provides some assurance that the facts support the conclusion. If the attorney for respondent preparing requests for admissions is complying with the intended uses of our Rules, he or she will be reviewing the files, setting forth facts that should be undisputed, and attaching documents substantiating the facts alleged. See Rule 90(a), Tax Court Rules of Practice and Procedure, and Notes to Rule 90(a) (60 T.C. 1069, 1114-1115). These additional steps provide some assurance that the determination made can be justified and that the judgment of the Court is not sanctioning nonmeritorious claims.

Section 7454(a) and Rule 142(b) require clear and convincing evidence. Deemed admissions are the equivalent of evidence establishing material facts. Rules 37(c) and 90(f); see *Morrison v. Commissioner,*, 81 T.C. 644, 648-649 (1983). Unadmitted allegations are not evidence. Rule 143(b); see *Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3d Cir. 1972).

Rules 37, 90(f), and 91(f) provide means whereby failure to plead or otherwise respond may lead to admissions that serve the role of evidence. It undermines the existence of those Rules and ignores Rule 143(b) to allow respondent to prevail on the fraud issue without following any of these simple procedures.

The majority opinion (page 1059) finds that respondent's net worth analysis is correct merely because petitioner did not appear for the trial of this case to dispute respondent's allegations. The opinion holds that respondent's net worth analysis "establishes a pattern of underreporting of substantial amounts of income by petitioner" and that the pattern "is evidence that petitioner knew that he substan-

tially had understated his income and substantially underpaid his tax." These findings are based merely on petitioner's default and *not on any evidence.* Respondent has not satisfied his statutory burden of proving fraud and should not prevail on that issue. I respectfully dissent.

CHABOT, SHIELDS, WRIGHT, and PARR, *JJ.,* agree with this dissent.