SIDNEY E. LITT, Deceased, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Litt v. Commissioner
Docket No. 29885-84
United States Tax Court
T.C. Memo 1990-582; 1990 Tax Ct. Memo LEXIS 653; 60 T.C.M. (CCH) 1235; T.C.M. (RIA) 90582; November 13, 1990, Filed *653 An appropriate order and decision will be entered. John A. Guarnieri and James C. Fee, Jr., for the respondent. PARKER, Judge. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION This case is before the Court on respondent's Motion for Default Judgment. Respondent determined the following deficiencies and additions to tax in petitioner's Federal income tax: Year
Deficiency
Sec. 6653(b) Addition 1976
$ 1,425
$    713
1977
14,182
7,091
1978
50,556
25,278
1979
19,425
9,713
Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. By Order dated September 26, 1989, this *654 Court granted respondent's Motion to Dismiss for Lack of Prosecution, insofar as it related to those issues upon which petitioner had the burden of proof. The sole issue remaining for decision is whether default judgment, pursuant to Rule 123(a), is proper with respect to the additions to tax under section 6653(b). FINDINGS OF FACT Petitioner, Sidney E. Litt, was incarcerated in Federal prison in Lexington, Kentucky, at the time this petition was filed. His prior place of residence was in Huntingdon Valley, Pennsylvania. Petitioner was a calendar year taxpayer for the years at issue. Respondent's answer denied the substantive allegations of the petition and in support of his determination that a part of the underpayment of tax each year was due to fraud, respondent alleged in paragraph 8 as follows: a. In 1975, petitioner began an association with Citation Mortgage Corporation (CMC) as its executive vice-president. b. CMC was represented to be in the business of obtaining loans for potential borrowers. c. During the years in issue petitioner was president and treasurer of Libor International, Limited, Inc., a company that was represented to be in the business of *655 funding or obtaining loans for potential borrowers. d. During the years in issue the petitioner was the secretary-treasurer of Mark Equitities [sic] Limited, Inc., a corporation that was represented to be in the business of obtaining loans for potential borrowers. e. During the years in issue, petitioner devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, knowing at the time that such pretenses, representations and promises were false and fradulent when made. The purpose and object of petitioner's scheme and artifice was to obtain money fraudulently from potential borrowers by falsely promising those individuals that petitioner would obtain the financing needed by the potential borrowers. f. In connection with this scheme and artifice petitioner told potential borrowers that petitioner and the companies with which he was associated had obtained large loans for others in the past and that petitioner could obtain the financing needed by the potential borrowers within a very short period of time. g. As part of this scheme and artifice petitioner requested and received money from *656 potential borrowers after falsely telling those borrowers that this money would remain in an escrow or trust account until financing was obtained, at which time this money would be refunded to the potential borrower. h. As part of this scheme and artifice petitioner requested and received expense monies and advance fee payments from potential borrowers after falsely assuring those borrowers that this money would be used in good faith to obtain the financing requested by the borrowers. i. As part of this scheme and artifice petitioner used the name of Sasha Teplitz to avoid detection by law enforcement authorities and to deceive other potential borrowers. j. During the years 1976, 1977, 1978 and 1979, the petitioner received taxable income from the scheme and artifice described herein. k. Petitioner filed individual income tax returns for the years 1976, 1977, 1978 and 1979 on which he reported income from the scheme and artifice described above in the amounts of $ 29,989.00, $ 53,686.00, $ 63,397.00 and $ 67,454.00, respectively. l. During the years 1976, 1977, 1978 and 1979, petitioner in fact received income from the scheme and artifice described herein in the amounts *657 of $ 37,243.45, $ 102,116.14, $ 158,905.17 and $ 99,640.04, respectively. m. Petitioner signed his income tax returns for the taxable years 1976, 1977, 1978 and 1979 subject to the penalties of perjury. n. Petitioner's fraudulent omission of specific items of income on his income tax returns filed for 1976, 1977, 1978 and 1979 is part of a four year pattern of intent to evade taxes. o. The petitioner understated taxable income on his income tax returns for the taxable years 1976, 1977, 1978 and 1979 in the amounts of $ 7,254.45, $ 48,430.14, $ 95,508.17 and $ 32,186.04, respectively. p. The petitioner fraudulently and with intent to evade tax omitted from his income tax returns for the taxable years 1976, 1977, 1978 and 1979, the income from the scheme and artifice described herein in the amounts set forth in subparagraph o. of this paragraph. q. A part of each deficiency in income tax for the taxable years 1976, 1977, 1978 and 1979, is due to fraud with intent to evade taxes.
This scheme also formed the basis for an indictment handed down by the grand jury in the Eastern District of Pennsylvania. On June 7, 1983, as a result of this indictment, petitioner *658 pled guilty to numerous counts, including four counts of violating 26 U.S.C. section 7206(1). [1] The violations occurred when petitioner filed his Federal income tax returns for calendar years 1976 through 1979. Specifically, petitioner was convicted of making and subscribing, under penalties of perjury, tax returns which substantially understated gross receipts. On February 6, 1989, respondent advised the Court that petitioner had died on December 14, 1988. Respondent also wrote to petitioner's known heirs, notifying them of the pending litigation. None of the heirs expressed an interest in continuing the litigation. On June 5, 1989, respondent filed a Motion to Dismiss for Lack of Prosecution. On June 14, 1989, the Court issued an order directing the heirs to advise the Court if they intended *659 to seek appointment to act on behalf of petitioner's estate. On July 10, 1989, petitioner's son, Kerry M. Litt, Esq., responded to this order on behalf of himself and other heirs, stating that they did not intend to seek such appointment. On July 27, 1989, the Court issued an order to show cause as to why this motion to dismiss should not be granted. The Court received no response. Accordingly, on September 26, 1989, the Court granted the motion, but only insofar as it related to issues upon which petitioner had the burden of proof. As to the section 6653(b) issue, the Court ordered that the case proceed to trial. In November 1989, respondent attempted to confer with the heirs for the purpose of stipulating facts on the remaining issue. Kerry Litt informed respondent, by telephone, that neither he nor the other heirs intended to pursue this litigation. None of the heirs attended the scheduled conference. In December, respondent notified the heirs that he would move for default judgment if they did not wish to carry on the litigation. Respondent was again advised that the heirs had no intention of carrying on the litigation. On June 1, 1990, the Court calendared the case *660 for trial during the trial session in Washington, D.C., commencing on November 5, 1990. Respondent again contacted the heirs but found none was interested in participating in the litigation. On October 22, 1990, respondent filed the pending motion, a copy of which was served on the heirs. By order dated October 24, 1990, a copy of which was served on the heirs, the Court informed the parties that if there was no appearance by any of the heirs at the calendar call on November 5, 1990, the motion would be taken under advisement by the Court to be acted upon in due course. There was no appearance by any of the heirs at the calendar call of the trial session on November 5, 1990. OPINION Because petitioner in this case did not file a reply to respondent's answer, petitioner is deemed to have denied the affirmative allegations in the answer. Rule 37(c). However, in Gordon v. Commissioner, 73 T.C. 736, 742 (1980), which involved facts not materially distinguishable from the facts herein, we held: where the petitioner initially denies fraud in his reply but it is thereafter clearly and unequivocally stated to the Court that the addition to tax under section *661 6653(b) will not be contested, we can exercise our discretion pursuant to Rule 123(a), and enter a default decision including the fraud addition to tax without the necessity of requiring respondent to affirmatively prove fraud. [Fn. ref. omitted.]
Here there is such a clear and unequivocal indication on behalf of the taxpayer that the fraud issue will no longer be contested. Absent such an indication, and where the taxpayer fails to appear at the trial, we may nonetheless grant a motion for default if respondent's pleadings allege specific facts sufficient to sustain a finding of fraud. Smith v. Commissioner, 91 T.C. 1049, 1058 (1988).Here, respondent's well-pleaded facts, quoted in the Findings of Fact above, also satisfy that requirement. Accordingly, we hold that a default judgment is appropriate in this case, and respondent's motion will be granted. An appropriate order and decision will be entered. Footnotes
1. Petitioner also pled guilty to seven counts of mail fraud, nine counts of wire fraud, six counts of interstate transportation of property taken by fraud, and one count of conspiracy.↩