T.C. Memo. 2005-101

UNITED STATES TAX COURT

DONALD G. FORD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3436-97.                    Filed May 9, 2005.

Donald G. Ford, pro se.

<u>Aubrey C. Brown</u> and <u>Andrew M. Winkler</u>, for respondent.

MEMORANDUM OPINION

COLVIN, <u>Judge</u>:  This case is before the Court on respondent's motion for default and entry of decision. Respondent requests that we find petitioner in default and enter a decision against him for deficiencies including additions to tax for fraud and the fraud penalty.  Petitioner was ordered to file a response to respondent's motion, but he failed to do so. We will grant respondent's motion for reasons described below.

Respondent determined deficiencies in petitioner's income tax and additions to tax and a penalty for taxable years 1986 to 1990 as follows:[1]

| Year | Deficiency | Additions to tax Sec. 6651(a)(1) | Sec. 6653(b)(1) | Penalty Sec. 6663 |
|---|---|---|---|---|
| 1986 | $152,373 | | $114,280 | |
| 1987 | 10,819 | | 8,115 | |
| 1988 | 58,380 | -- | 43,785 | -- |
| 1989 | 55,509 | $5,266 | -- | $41,632 |
| 1990 | 45,637 | | | 34,228 |

Section references are to the Internal Revenue Code as in effect during the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

A. The Pleadings

The petition in this case was filed on February 24, 1997. Petitioner lived in Louisville, Kentucky, when the petition was filed.

In the answer, respondent alleged:

(a) Throughout the years in issue, Petitioner and W. Paul Schultz (Schultz), Petitioner's accountant and return preparer, willfully conspired to evade and defeat income tax due from Petitioner for those years.

(b) Petitioner and Schultz willfully made and signed federal income tax returns for Petitioner's 1986 through 1990 tax years, which returns were made under the penalties of perjury and were filed with the Internal Revenue Service (the Service), which returns they did not believe to be true and correct as to every

---

[1] Respondent concedes the deficiencies, additions to tax, and fraud penalty for 1986, 1987, and 1990, if respondent's motion is granted.

material matter.  In preparing, signing, and filing those returns, Petitioner and Schultz knew that the returns were false and fraudulent as to material matters.

(c)  Throughout the years in issue, Petitioner was a used car dealer in Louisville, Kentucky, and Schultz was a Certified Public Accountant in that same city.

(d)  The manner and means by which Petitioner and Schultz sought to carry out the conspiracy to evade income tax for Petitioner's tax years in issue included the willful creation of a fraudulent assignment of a note receivable.  It was further a part of such effort to evade and defeat Petitioner's income tax liability for Petitioner and Schultz to cause this fraudulent transaction and loss to be reported and carried forward on Petitioner's returns.  The fraudulent loss amount was $300,000.00.

(e)  In furtherance of their conspiracy Petitioner and Schultz committed a number of overt acts.

(f)  In about 1984, Petitioner sold real estate to Huber's, Inc., for a total of $1,500,000.00.

(g)  On his return for his 1984 tax year, Petitioner reported that he had sold the land for $400,000.00, that his basis in the land was $440,000.00, and that his loss on the sale of the land was $40,000.00.  He further reported that he sold the buildings on the land for $1,100,000.00 and was electing the installment method of reporting that sale, with the result that he paid no tax on the sale of the buildings for his 1994 tax year.  His election required that he report as taxable income a portion of all payments he received on the sale of the buildings.

(h)  On the above sale, Huber's, Inc., paid Petitioner a $400,000.00 down payment and gave him a promissory note for $1,100,000.00.  Huber's Inc. made interest payments on the note until in or about the year 1986.

(i)  In July, 1986, Ken Huber (Huber), president of Huber's, Inc., notified Petitioner of its intent to pay off the $1,100,000.00 note.  Petitioner asked Huber if Huber's, Inc., would agree to pay off $800,000.00 of

the note and renegotiate a note for the remaining $300,000 balance, which Huber's, Inc., subsequently agreed to do.

(j) On December 10, 1986, Petitioner and his then wife, Margaret Ford, executed an assignment conveying all of Petitioner's interest in the $1,100,000.00 note to Schultz. The assignment recited that it was made in consideration for Schultz's payment of $800,000.00 to Petitioner.

(k) On that same date, Schultz applied for and received a loan in the amount of $800,000.00 from the Bank of Louisville. Schultz's loan application showed no information about his ability to repay the loan.

(l) On that same date, Schultz used the proceeds of the $800,000.00 loan to purchase a one year certificate of deposit in the amount of $800,000.00 payable to Petitioner.

(m) On that same date, Petitioner executed a collateral assignment and hypothecation agreement to the Bank of Louisville, pledging the certificate of deposit as collateral for the Bank of Louisville's $800,000.00 loan to Schultz.

(n) On that same date, Petitioner paid $2,000.00 to Schultz for accounting fees.

(o) On December 23, 1986, Huber's, Inc., transferred $800,000.00 from its account at Citizen's Fidelity Bank & Trust Company to the Bank of Louisville, where the funds were applied to the payment of Schultz's $800,000.00 loan.

(p) On that same date, Huber's, Inc., executed a promissory note to Schultz in the amount of $300,000.00.

(q) On that same date, Schultz executed an assignment conveying all of his interest in the $300,000.00 note to Petitioner and his wife.

(r) On that same date, Schultz executed a limited power of attorney to name Petitioner as his attorney in fact on all matters pertaining to the $300,000.00 note.

(s)  On that same date, Petitioner paid $6,000.00 to Schultz for accounting fees.

(t)  On that same date, the Bank of Louisville debited Petitioner's personal checking account for $2,036.67 and credited that amount to interest owed on Schultz's $800,000.00 note.

(u)  On March 20, 1988, Huber's, Inc., paid in full the balance on the $300,000.00 promissory note, plus interest, by a check payable to Schultz in the amount of $330,969.93.

(v)  On that same date Schultz endorsed the $330,969.93 check for deposit in petitioner's checking account.

(w)  On October 19, 1987, Petitioner filed his return for his 1986 tax year.  The return included a Schedule C for "Financing - Sales Notes."  The Schedule C shows gross receipts of $800,000.00, with a related cost of goods sold of $1,100,000.00, and a loss in the amount of the $300,000.00 difference.  When the loss was combined with interest income, the net result was a negative gross income of $187,586.00.  And the net result on Petitioner's return for his 1986 tax year is a reported loss for taxable income of $234,345.00, and a return that is false as to a material fact.

(x)  The negative taxable income of $234,586.00 produced carryforward amounts that were carried forward to Petitioner's returns for his 1987, 1988, 1989, and 1990 tax years, making each of those returns false as to a material fact.

(y)  As part of his fraudulent actions, Petitioner willfully failed to report on his return for his 1986 tax year the $800,000.00 in income that he received as an installment payment on the 1984 sale of the buildings.  If that income had been properly reported it would have resulted in $739,840.00 in additional taxable income for Petitioner's 1986 tax year.

(z)  As part of his fraudulent actions, Petitioner willfully failed to report on his return for his 1988 tax year the $300,000.00 in income that he received as an installment payment on the 1984 sale of the buildings.  If that income had been properly reported

it would have resulted in $277,440.00 in additional taxable income for Petitioner's 1988 tax year.

(aa)  Petitioner knowingly, willfully, and with the intent to evade tax signed and caused to be filed with the Service returns for his 1986 through 1990 tax years that understated his tax liability for each year.

(ab)  Petitioner reported a negative taxable income of $234,345.00 on his return for his 1986 tax year when he then and there well knew and believed that the sale reported thereon should have been reported as an installment sale with a taxable gain of $739,840.00, which when combined with the other items of income and expense on his return would have resulted in taxable income of $805,495.00 for his 1986 tax year.

(ac)  Petitioner reported a $234,775.00 net loss carry forward on his return for his 1987 tax year and a negative taxable income of $184,120.00 for that year when he then and there well knew and believed that he should not have reported any loss carry forward and that he should have reported a positive taxable income in the amount of $50,665.00.

(ad)  Petitioner reported a $180,320.00 loss carry forward on his return for his 1988 tax year and a negative taxable income of $140,347.00 for that year when he then and there well knew and believed that he should not have reported any loss carry forward, that he should have reported taxable installment sale income of $277,440.00, and a positive taxable income in the amount of $317,413.00.

(ae)  Petitioner reported a $136,147.00 loss carry forward on his return for his 1989 tax year and a negative taxable income of $76,230.00 for that year when he then and there well knew and believed that he should not have reported any loss carry forward and that he should have reported a positive taxable income in the amount of $59,517.00.

(af)  Petitioner reported a $72,230.00 loss carry forward on his return for his 1990 tax year and a taxable income of $21,833.00 for that year when he then and there well knew and believed that he should not have reported any loss carry forward and that he should

have reported a taxable income in the amount of $94,063.00.

(ag)  Petitioner omitted $31,500.00 in dividend income from Don Ford Cars, Inc., from his return for his 1989 tax year with the intent to understate, and defeat the federal income tax on that income item.

(ah)  Petitioner omitted $22,917.00 in interest income received from C. Ball from his return for his 1990 tax year with the intent to understate, evade, and defeat the federal income tax on that income item.

(ai)  Petitioner omitted $39,874.00 and $22,233.00 in interest income from Don Ford Cars, Inc. from his returns for his 1989 and 1990 tax years, respectively, with the intent to understate, evade, and defeat the federal income tax on those amounts.

(aj)  Petitioner omitted $55,955.00 and $33,664.00 in interest income from Tri-City Credit from his returns for his 1989 and 1990 tax years, respectively, with the intent to understate, evade, and defeat the federal income tax on those amounts.

(ak).  Petitioner omitted $7,000.00 in rent income from Don Ford Cars, Inc. from his return for his 1989 tax year with the intent to understate, evade, and defeat the federal income tax on that amount.

(al)  In addition to conspiring with Schultz to evade and defeat income tax for his 1986 through 1990 tax years, Petitioner also gave Schultz information from which to prepare his returns.  Petitioner with the intent to evade and defeat federal income tax sometimes did not give complete and correct information to Schultz in order to maximize his fraudulent tax benefits.

(am)  A part of each deficiency in income tax for Petitioner's taxable years 1986 through 1990 is due to fraud with intent to evade taxes.

Petitioner filed a reply in which he denied all allegations relating to fraud and alleged that he undertook the transactions described in respondent's reply in good faith and relied on

Schulz and other tax professionals after disclosing all of the relevant facts to them.[2]

B.    Procedural History

This case was set for trial in Louisville, Kentucky, several times, but was continued on November 7, 1997, September 30, 1998, December 22, 1999, and February 6, 2001.  This case was called for report at the February 5, 2001, Louisville, Kentucky, trial session and set for trial at a special session of the Court to begin on April 23, 2001.  A stipulation of facts was filed on April 3, 2001.  However, the case was continued on April 17, 2001, and the special session was canceled.

Motions to withdraw filed by petitioner's counsel Robert C. Webb and Scott William Dolson were granted on January 9, 2002, and September 5, 2002.

Petitioner, his adult son, and respondent had several discussions in an effort to narrow the issues or resolve this case, as ordered by the Court on October 1, 2003.  The discussions did not result in a narrowing of the issues.  Around February 9, 2004, petitioner's son told respondent's counsel that

---

[2]  On Mar. 22, 2001, an amendment to petition was filed in which petitioner alleged that respondent was barred by the doctrines of collateral estoppel, res judicata, and waiver, and by sec. 6212 from proceeding with this case.  On May 1, 2001, an answer to amended petition was filed in which respondent denied the allegations in the amendment to petition.

petitioner did not have a guardian or anyone with power of attorney or any authority to represent his interests.

Respondent requested a letter verifying the above, but no letter was provided to respondent. Rule 60(d) provides that, absent a duly appointed representative to represent an incompetent taxpayer's interest in the Tax Court, the incompetent person may act by a next friend or by a guardian ad litem. See Campos v. Commissioner, T.C. Memo. 2003-193. There is no indication in the record that petitioner or his son has tried to appoint a guardian or to have anyone act as next friend.

Petitioner failed to file status reports in response to Court orders dated October 1, 2003, and July 14, 2004. The July 14, 2004, Order warned petitioner that failure to "respond to this order without good cause shown may result in dismissal of this case." Petitioner did not file a response to respondent's Motion For Default And Entry Of Decision, as ordered by the Court on September 15, 2004. The Court's September 15, 2004, order warned petitioner that "failure to file a response could result in respondent's motion being granted and decision entered against petitioner."

## Discussion

If a party fails to plead or otherwise proceed as provided by the Rules or as required by the Court, that party may be held in default on the motion of the other party or on the initiative

of the Court.  Thereafter, the Court may enter a decision against the defaulting party.  Rule 123.

Petitioner's son alleges that petitioner cannot proceed due to petitioner's mental health.  We have given petitioner and his son an extended amount of time to make arrangements to proceed. However, neither petitioner nor anyone else has provided the Court with a response that adequately recognizes petitioner's obligations in this matter or respondent's legitimate interest in pursuing this case.  There must be a procedural means to bring the case to a close regardless of petitioner's mental health. Petitioner has failed to proceed as ordered by the Court and has abandoned his case.  Petitioner defaulted by not complying with orders of this Court beginning more than a year and a half ago. Respondent's motion for default as to deficiencies for 1988 and 1989 and addition to tax under section 6651(a)(1) for 1989 will be granted.

A taxpayer may be liable for fraud based on default if the Commissioner alleges sufficient facts in the answer to support a finding of fraud even if the taxpayer denies the facts the Commissioner alleged in the answer. Smith v. Commissioner, 926 F.2d 1470, 1478 (6th Cir. 1991), affg. 91 T.C. 1049 (1988); Rechtzigel v. Commissioner, 79 T.C. 132, 142 n.11 (1982), affd. 703 F.2d 1063 (8th Cir. 1983); see Gordon v. Commissioner, 73 T.C. 736 (1980).

The facts alleged in respondent's affirmative pleadings are sufficient to establish fraud by clear and convincing evidence. Petitioner received substantial amounts of unreported income. Bradford v. Commissioner, 796 F.2d 303, 308 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Petitioner's pattern of substantially underreporting income for several years is strong evidence of fraud, Holland v. United States, 348 U.S. 121, 137-139 (1954), as is the fact that he deliberately overstated his deductions, Drobny v. Commissioner, 86 T.C. 1326, 1349-1351 (1986).

The facts pleaded in respondent's answer clearly establish that petitioner fraudulently underpaid his income taxes for 1988 and 1989. Thus, we will grant respondent's motion for default pursuant to Rule 123(a).

An appropriate order and decision will be entered.